Syllabus.

# Wytheville.

WALLEN v. WALLEN AND OTHERS.

June 13, 1907.

Absent, Cardwell, J.

1. APPEAL AND ERROR—*Final Judgment—Exception to Ruling of Trial Court.*—An order, refusing to admit to probate a paper offered as a will, is a final judgment to which a writ of error lies, although no provision is made for the costs of the proceeding in which the will is offered; and an exception to the action of the court, refusing to set aside the verdict of the jury and grant a new trial of the issue as to whether or not the paper offered was the true last will and testament of the testator, is sufficient to enable the propounder of the paper to maintain a writ of error, although no formal exception was taken to the judgment of the court refusing to admit the paper to probate.

2. APPEAL AND ERROR—*Harmless Error—Bill of Particulars.*—The refusal of the trial court to require a defendant to file a statement of his grounds of defense is not assignable error here, where it appears that the defenses relied on were distinctly developed at the trial, the greatest latitude allowed the parties, and that the plaintiff could not have suffered any injury by the refusal of the court to require such statement to be filed.

3. EVIDENCE—*Relevancy—Wills—Probate.*—On a motion to admit a will to probate, where the only issue is undue influence, the propounder cannot be asked if she wants to hold on to all of the property of the testator, to the exclusion of his children. The evidence is irrelevant to the issue, or to the due execution of the will.

4. WILLS—*Undue Influence—Devise to Wife—Pecuniary Condition of Children—Evidence.*—Upon issues of testamentary incapacity and of undue influence exerted by a wife over her husband in making a will of all of his property to her, to the exclusion of his children, evidence that his children were poor and in needy circumstances is

Syllabus.

relevant, and may be considered as a circumstance in determining the validity of the testamentary disposition of his property.

5. WITNESSES—*Impeachment—Questions Tending Merely to Degrade Witness.*—A witness cannot be asked a question which merely tends to degrade him, and thereby affect his credibility, if the question is otherwise irrelevant.

6. WILLS—*Testamentary Capacity—Burden of Proof—Presumption of Sanity.*—The burden of proving testamentary capacity is on the propounder of a will, but when a will is offered for probate and it is shown that all the statutory formalities have been complied with, and especially where it appears that the will is wholly in the handwriting of, and is signed by the testator, there is a presumption of testamentary capacity. There is, indeed, a presumption in favor of the sanity of every man until evidence that he is of unsound mind is introduced.

7. EVIDENCE—*Fraud—Undue Influence—Burden of Proof—Shifting of Burden.*—Fraud is never presumed, but must always be proved by the party alleging it. This burden never shifts; and while it is necessary for the propounder of a will, the probate of which is resisted on the ground of undue influence, to bring forward evidence to repel evidence of undue influence which has been offered by the other side, the real burden of proof upon the issue of undue influence has not changed, and it is misleading and erroneous, after having instructed the jury correctly on the subject, to further instruct them that "the burden of proof in this case lies upon said propounder to satisfy the jury by evidence that the paper writing propounded is the last will and testament of a free and capable testator."

8. APPEAL AND ERROR—*Instructions—Objections not made in Trial Court.*—This court cannot consider an objection to an instruction given by the trial court, when the objection was not saved by proper exception. The objection cannot be made in this court for the first time.

9. WILLS—*Testamentary Capacity—Undue Influence—Nature and Character of Will—Evidence.*—The nature and character of a will may be considered as a circumstance along with all the other circumstances affecting the testamentary capacity of a testator and the question of undue influence, but cannot of itself be sufficient to establish the want of testamentary capacity, or that the testator, in the execution of his will, was controlled by undue influence.

10. WILLS—*What Constitutes Undue Influence.*—The influence which will vitiate a will must amount to force and coercion, destroying free agency. It must not be the mere desire of gratifying the wishes of another, for that would be a very strong ground in favor of the testamentary act. Further, there must be proof that the act was

obtained by coercion or importunity which could not be resisted; that it was done merely for the sake of peace, so that the motive was tantamount to force and fear.

11. WILLS—*Testamentary Capacity—Undue Influence—Evidence—Declarations of Testator.*—Upon issues of testamentary capacity and undue influence, the declarations of the testator not made contemporaneously with the execution of his will, are relevant evidence to show his feelings and affections towards the natural objects of his bounty, his mental condition as reflecting upon his testamentary capacity; but are not admissible to establish the substantive fact of undue influence.

12. INSTRUCTIONS—*Needless Multiplication.*—As every instruction unnecessarily given increases the chances of a reversal, the multiplication of instructions should be avoided as far as possible.

Error to a judgment of the Chancery Court of the city of Richmond on a motion to admit a will to probate. Judgment for the defendants. Plaintiff assigns error.

*Reversed.*

The ruling of the trial court will best appear from plaintiff's bill of exception No. 8, which is in the following words and figures, to-wit:

"Be it remembered that at the trial of the issue in this case the plaintiff, Alice H. Wallen, moved the court to instruct the jury as follows:

## A.

"The court instructs the jury that every person over twenty-one years of age and of sound mind is entitled under the law to make a will, and to dispose of his property as he pleases, and to discriminate against or between his next of kin as he may choose."

## B.

"The court instructs the jury that if they believe from the evidence (1) that the paper writing offered in evidence was wholly written by the decedent, James A. Wallen, and signed

by him; and (2) that at the time of its execution, said decedent was of sound mind and over twenty-one years of age, and that he knew the contents thereof and understood it to be his last will and testament, then they must find that said paper writing is, in all its parts, the true last will and testament of said decedent, unless they shall further believe from the evidence that he was unduly influenced (as explained in instructions to follow) to execute the same, in which event, they must find that such writing is not such true last will and testament."

C.

"(a) The court instructs the jury that the burden of proving that James A. Wallen was of sound mind at the time of the execution of the paper writing herein offered as his last will and testament, rests upon the propounder, Alice H. Wallen; and that it is incumbent upon her to establish that fact by a preponderance of testimony.

(b) The court instructs the jury that undue influence, which is a species of fraud, must not be presumed, but must be clearly and strictly proved; and that the burden of such proof rests upon the contestants, J. H. Wallen and others; and that it is incumbent upon them to establish undue influence by a preponderance of testimony."

D.

"The court instructs the jury that every person who is capable of recollecting the property he is disposing of, the manner of disposing of it, and the natural objects of his bounty, is of sound mind."

E.

"The court instructs the jury that the influence which will vitiate a will must amount to force and coercion, destroying free agency. It must not be the mere desire of gratifying the wishes of another; that would be a very strong ground in favor

of the testamentary act. Further, there must be proof that the act was obtained by coercion or importunity which could not be resisted; that it was done merely for the sake of peace, so that the motive was tantamount to force and fear."

### F.

."The court instructs the jury, that neither the facts of sickness, old age, eccentricities, imperfect memory nor impaired intellect, if they believe from the evidence that any or all of them existed in this case, are sufficient of themselves to prove that the decedent, James A. Wallen, was of unsound mind within the meaning of the second instruction above; but any or all of these facts, if they existed, may be considered by the jury in determining the question of the soundness of his mind."

### G.

"The court instructs the jury that there is no presumption of undue influence having been exercised by a wife upon her husband merely on account of the relationship existing between the parties; and, further, that solicitations, persuasions and urgings by a wife to secure an advantage in a will, though successful, do not give rise to the presumption of undue influence where the evidence does not show by a preponderance thereof that the free agency of the husband was, by means of such solicitations, persuasions and urgings, destroyed; nor does the fact that the wife received the whole of the estate to the exclusion of the other heirs raise a presumption against the validity of the will."

### H.

"The court instructs the jury that, while declarations of a testator not contemporaneously made with the execution of a will are relevant evidence to show the feeling or affection of a testator towards the natural beneficiaries of his bounty, yet

they are not admissible to establish the substantive fact of undue influence."

## I.

"The court instructs the jury that the circumstance that the writing exhibited for probate in this case as the last will and testament of James A. Wallen was wholly written by him may be considered by them as evidence that he was in his senses and able to make a will at the time the writing was made."

## J.

"The court instructs the jury that in order to declare the paper writing offered in evidence as the last will and testament of James A. Wallen invalid, on account of undue influence, it is not sufficient to find that such evidence shows that there was influence which affected the testator in the disposition of his property; but in order to render such evidence sufficient to find against the will, it must show that the influence claimed to be undue dominated his will, at the time he was making the disposition of his property, or took away his free agency and prevented the exercise of judgment and choice by him."

"And the defendants, James A. Wallen *et als.* moved the court to instruct the jury as set forth in instructions Nos. 13 to 30, both inclusive, hereinafter set forth, and which were given by the court.

"And thereupon the court instructed the jury in the words and figures following:

"(1) The court instructs the jury that every person over twenty-one years of age, and possessing testamentary capacity, is entitled under the law to make a will and to dispose of his property as he pleases and to discriminate against or between his next of kin as he may choose."

"(2) The court instructs the jury that every person is of testamentary capacity who is capable of knowing and understanding the nature of the instrument he is engaged in pre-

paring, the elements of which the will is composed, and the disposition of the property as therein provided for, both as to the property he means to dispose of by will, and the persons to whom he means to give it, and the manner in which it is to be distributed amongst them."

"(3) The court instructs the jury that neither sickness, old age, imperfect memory, nor impaired intellect, even if the jury believe from the evidence that any or all of them existed in the decedent, James A. Wallen, at the date the paper here propounded for probate was written, are sufficient to render void the said paper; if the jury also believe from the evidence that the said decedent, at the time the said paper was written, was capable of understanding the nature of the instrument he was engaged in preparing, and of recollecting what property he was about to dispose of, the manner of disposing of it, and the objects of his bounty, they must find that he had legal capacity to make a valid disposition of his property."

. "(4) The court instructs the jury that if they believe from the evidence that the paper writing here propounded as the last will and testament of James A. Wallen, was wholly written by him and signed by him in such manner as to make it manifest that the name of said James A. Wallen was intended as his signature thereto, and that at the time of its execution he was over twenty-one years of age, and of testamentary capacity, and that he knew and understood the contents thereof, and knew it to be his last will and testament, then they must find that said paper writing is, in all its parts, the true last will and testament of said decedent; unless they shall further believe from the evidence that he was unduly influenced (as explained in instructions to follow) to execute the same, in which event they must find that said writing is not his true last will and testament."

"(5) The court instructs the jury that the burden of proving the testamentary capacity of the said decedent, James A. Wallen, at the time of the execution of the said paper writing, rests

upon the propounder, Alice H. Wallen, and that it is incumbent upon her to establish this fact to their satisfaction by clear proof."

"(6) The court instructs the jury that to make a good will the testator must be a free agent, but all influences are not unlawful; appeals to affection, or ties of kindred, to gratitude for past services, or pity for future destitution, or the like, are all legitimate, and may be fairly urged on the testator. On the other hand, pressure of whatever character, if so exerted as to overpower the volition, without convincing the judgment, is a species of constraint, under which no valid will can be made. Importunity which the testator has not the will or the strength to resist, and to which he yields for the sake of peace and quiet, if carried to a degree in which the testator's judgment, discretion, or wish is overborne, will constitute undue influence, though no force is used. In other words, the testator's will must be the offspring of his own volition and not the record of the wishes and desires of some one else; and in determining whether the testator's free volition has been overborne or controlled, the jury must consider his age, his mental and physical condition and all the circumstances surrounding the testator at the time the will was executed; and should the jury believe from the evidence that the paper here propounded for probate was the product of undue influence, their verdict must be against it."

"(7) The court further instructs the jury that undue influence (which is a species of fraud) must not be presumed, but must be clearly and strictly proved, and the burden of proving it rests upon those who allege it; but, if undue influence is proved by evidence, the burden of repelling such undue influence is on the propounder, Alice H. Wallen; in other words, the burden of proof in this case lies upon said propounder to satisfy the jury by evidence that the paper writing propounded is the last will of a free and capable testator."

"(8) The court instructs the jury that no presumption of

undue influence having been exercised by a wife upon her husband in the making of his will arises merely on account of the marriage relationship existing between them; and further, that persuadings and urgings by a wife to secure an advantage in a will, though successful, do not give rise to the presumption of undue influence, where the evidence does not show by a preponderance thereof, that the free agency and volition of the husband was by means of such persuadings and urgings overborne or controlled; nor does the mere fact that the wife received the whole of the estate, to the exclusion of the other heirs, raise a presumption against the validity of the will."

"(9) The court instructs the jury that declarations of a testator whether made contemporaneously with or prior to the execution of a will, are relevant evidence to show the feelings or affection of a testator toward the natural beneficiaries of his bounty, and that such declarations may be taken into consideration by them, along with other facts and circumstances of the case, in determining whether, under influence, was or was not used upon the testator in the making of his will, and they may give the same such weight as, in their sound discretion and judgment, they may be entitled to."

"(10) The court instructs the jury that, if they believe from the evidence that the paper writing here propounded as the last will and testament of the decedent, James A. Wallen, was wholly written and signed by him, they may consider such fact as tending to prove that he was in his senses and able to make a valid will at the time the said writing was made."

"(11) The court instructs the jury that every person who is capable of recollecting the property he is disposing of, the manner of disposing of it, and the natural objects of his bounty, is of sound mind."

"(12) The court instructs the jury that in order to declare the paper writing offered in evidence as the last will and testament of James A. Wallen invalid, on account of undue influence, it is not sufficient to find that such evidence shows that

there was influence which affected the testator in the disposition of his property, but in order to render such evidence sufficient to find against the will, it must show that the influence claimed to be undue dominated his will, at the time he was making the disposition of his property, or took away his free agency and prevented the exercise of judgment and choice by him."

"(13) It is the duty of Alice H. Wallen to establish to the satisfaction of the jury, not only that the will in question was executed with the formalities required by law, but also that, at the time that it was executed, James A. Wallen was of sound and disposing mind and memory—not only that the instrument was wholly in the handwriting of the testator and signed by the said James A. Wallen in such manner as to make it manifest that the name of said James A. Wallen was intended as his signature thereto, but also that it was executed by one who understood its contents and was capable of being a testator and by one to whom the law had given the right of making a disposition of property by will.  And otherwise, the verdict must be against the will."

"(14) The will cannot be sustained unless the jury believe from the evidence that the testator at the time of its execution understood its contents, and had sufficient mind and memory to be capable of making a testamentary disposition of his property with sense and judgment in reference to the situation and amount of such property, and the relative claims of the different persons who are, or might be, the objects of his bounty. Unless the testator thus understood, and was capable, the verdict must be against the will, even though the jury may believe from the evidence that he was capable of understanding and conducting other transactions."

"(15) Direct proof is not necessary to overthrow a will, but any facts and circumstances are sufficient as evidence that satisfy the jury of the incapacity of the testator to make a testamentary disposition of his property at the time of the execution of the will."

"(16) The jury must consider the nature and character of the will, and if they find from the evidence that it is contrary to natural justice, they shall give this fact such consideration as they may deem proper in determining the question of the testator's capacity."

"(17) In determining the question of the testator's capacity, the jury are at liberty to consider whether the claims of near relationship have been disregarded; and if they find from the will and evidence that such claims have been disregarded, they may consider that fact in connection with other facts and circumstances of the case, and give it such weight as, in their sound judgment and discretion, they shall think it entitled to."

"(18) It is essential to the making of a valid will that the testator shall, at the time of its execution, be of disposing mind and memory. Failure of memory, if the jury find it to have existed, may be considered in connection with all other facts and circumstances of the case in determining the testator's capacity, and shall have such weight as the jury, in the exercise of their sound judgment and discretion, may think it entitled to."

"(19) It is essential to the exercise of the power to make a will that the person making it be able to comprehend and appreciate his relations to others who might, or ought to be, the objects of his bounty, and that no disorder of the mind shall have so far impaired the mind or poisoned his affections, perverted his sense of right, or prevented the exercise of his natural faculties as to render him incapable of such comprehension and appreciation, and bring about a disposal of his property, which, if his mind had been otherwise, would not have been made."

"(20) While undue influence which operates to defeat a will must be such as to overcome the free action of the mind at the time of the execution thereof, yet it is also true that the pressure may sometimes have been brought previously. If pressure constituting undue influence has been brought previously, and

remains so as to unduly influence the mind of the testator at the time of the execution of the will, the will cannot be upheld."

"(21) Proof of undue influence must, in most instances, be made out, if at all, by proof of facts and circumstances. Such facts and circumstances, standing alone, may be trivial, but when taken together are sufficient, if they satisfy the jury that the will was procured by undue influence."

"(22) The court instructs the jury that if they believe from the evidence that the paper writing here propounded for probate differs materially in its provisions from the previously expressed intentions of the decedent, and that, at the time of the execution of the said paper, he was an old man, and that he was materially impaired both in body and mind, and that the beneficiary of the said paper here propounded is his wife, and that she exercised dominion and control over his mind, so as to destroy his free agency, and that she unduly exercised such influence over him, these facts, if such they be, raise a presumption of undue influence which she, as the propounder of said paper, should overcome by satisfactory evidence."

"(23) While a person is not to be regarded of unsound mind simply because the provisions of his will may be unjust, yet if the jury, from the will and the evidence, find them to be unjust, in view of the claims that his children may have had upon him, the jury have a right to consider this fact in connection with the other facts and circumstances of the case in determining whether or not the testator was of unsound mind."

"(24). The amount of undue influence sufficient to invalidate a will may vary with the strength or weakness of mind of the person making it. The influence which would not subdue or control a mind unimpaired by age, disease or other cause, might subdue or control a mind thus impaired, even though the mind had not become so impaired as to render the person incapable of a testamentary act, free from such undue influence."

"(25) The question as to what is undue influence depends largely upon the circumstances of each case, chief of which are

the dispositions contained in the will, the situation of the person making it, the mental and physical condition at the time of making it. And if the jury shall believe from the evidence that influence which the testator was incapable of resisting was successfully employed to induce the testator to make an unequal disposition of his property, or disregard the ties of blood without sufficient cause, it should be viewed as illegitimate, and treated as undue, and if the jury entertain such belief, they shall find against the will."

"(26) The jury in determining whether there was undue influ* nce must consider the age and the physical and mental conditions of the testator, all the circumstances by which he was surrounded, including the condition, character and conduct of the persons around him, and his family relations, the extent and nature of his estate, and the dispositions of the will."

"(27) Even though the jury believe from the evidence that the testator was mentally capable of making a will, yet in determining whether the will in question was procured by undue influence, the jury must consider any evidence showing, or tending to show, that at the time of the execution of the will his faculties had become so weakened by age, disease or other cause, as to render him more subject to undue influence than he otherwise would have been."

"(28) The court instructs the jury that if they shall believe from the evidence that the said paper writing was procured by undue influence exercised upon the mind of the testator by any one, they shall find against the will."

"(29) Even though the jury may believe that the testator was mentally capable of executing a will, yet, in determining the question of undue influence, they should consider any evidence showing or tending to show that his mind was weakened or perverted so as to render him more subject to undue influence than he otherwise would have been."

"(30) If the jury believe from the evidence that the propounder of the paper, Alice H. Wallen, used means to prevent

the children of James A. Wallen from seeing him, except in the presence of the said Alice H. Wallen, or her sister, or a friend selected by the said Alice H. Wallen, the jury may consider that fact, in connection with other facts and circumstances, and give it such weight as, in their sound judgment and discretion, they shall think it entitled to in determining whether or not the said paper was the product of the said James A. Wallen's own volition."

To which action of the court, in refusing to give Instruction "C.," and in giving in lieu thereof Nos. 5 and 7, as a substitute therefor, the plaintiff objected, and also objected to the action of the court in refusing to give Instructions "E." and "H.," propounded by her, on the ground that said Instructions "C.," "E." and "H." correctly propounded the law of the case, and objected to the giving of Instructions Nos. 5, 6, 7, 9, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, on the grounds that said instructions were contrary to the law of the case, as applicable to the evidence of the case, all of which is certified in Bill of Exceptions No. 9, contradictory of other instructions given by the court, which correctly propounded the law of the case, were misleading, and so numerous as to be confusing; but the court refused to give said Instructions "C," "E," and "H," and likewise overruled said objection to said Instructions Nos. 5, 6, 7, 9, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, to which action of the court the plaintiff excepted and now files this, her bill of exceptions, which she prays may be signed, sealed, enrolled and made a part of the record."

After the jury had found that the paper offered was not the true last will and testament of the testator, the propounder of the will moved the court to set aside the verdict of the jury and grant her a new trial of the issue upon the ground (1) that the said verdict is contrary to the law and the evidence, and (2) that the court had misdirected the jury. Thereupon, the record states:

"And the court having heard the argument of counsel, doth overrule said motion, and doth refuse to set aside the said verdict.

"And the court, approving the said verdict, doth confirm the same, and doth adjudge, order and decree that the said paper writing, bearing date January 16th, 1904, offered for probate as the last will and testament of James A. Wallen, deceased, is not, nor is any part thereof, the true last will and testament of the said James A. Wallen, deceased; and the court doth refuse to admit to probate the said paper writing, or any part thereof, as the true last will and testament of the said James A. Wallen, deceased.

"The propounder of said paper writing, Alice H. Wallen, having signified her desire to appeal from this order, thirty days' time is given her to present to the court her bills of exception taken during the trial of said issue."

The evidence referred to in bills of exception Nos. 3, 4, 5 and 6 was the testimony of different children of the testator to the effect that they were severally very poor and owned no property.

*Henry R. and Robt. N. Pollard* and *Leake & Carter,* for the plaintiff in error.

*A. L. Holladay, Wm. L. Royall* and *C. W. Throckmorton,* for the defendants in error.

KEITH, P., delivered the opinion of the Court.

A jury was empaneled in the Chancery Court of the city of Richmond, to determine whether or not a certain paper writing, purporting to be the last will and testament of James A. Wallen, deceased, be the true last will and testament of said James A. Wallen. The jury found that the paper writing, bearing date the 16th day of January, 1904, and offered for

probate as the last will and testament of James A. Wallen, deceased, is not the true last will and testament of the said James A. Wallen. Thereupon Alice H. Wallen moved the court to set aside the verdict and grant her a new trial, (1) because the verdict was contrary to the law. and the evidence; and (2) because of misdirection of the jury. But the court approved the verdict, confirmed the same, and entered an order in accordance with it. And thereupon the case was brought before us upon bills of exception taken during the trial.

The defendants in error moved to dismiss the appeal for want of jurisdiction, because—

"First: No final order has been made by the lower court;

"Second: The plaintiff in error did not in terms except to the action of the lower court in refusing to grant a new trial. Her exception to the refusal of the court to set aside the verdict of the jury was insufficient;

"Third: The plaintiff in error did not except to the judgment of the lower court, refusing to admit to probate the paper writing offered by her."

None of these grounds are sufficient to sustain the motion to dismiss, and we do not think them of sufficient consequence to warrant an extended discussion. We are of opinion that the decision of the lower court was final, though it did not make provision for the costs of the suit; and that the exception taken by the plaintiff in error was sufficient to enable her to maintain her writ of error. The motion to dismiss is overruled.

The first error assigned in the petition is to the refusal of the court to require the defendants, before going to trial of the issue, to file a statement of the grounds of their defense, as requested by plaintiff in error.

Without undertaking to state categorically the cases to which the statute relied on does or does not apply, and granting that there might be conditions on a motion to admit a paper to probate, where the court would require a statement of the grounds relied upon by those opposing the probate, we shall content

ourselves with observing that in this case the plaintiff in error could have suffered no injury by the refusal of the court. The defendants relied, in general, upon want of testamentary capacity on the part of James A. Wallen, and undue influence exerted upon him in procuring the execution of the paper offered for probate, and to meet these issues, the greatest latitude was allowed the parties interested on both sides of the question.

The second error assigned is set out in plaintiff in error's first bill of exception. Alice H. Wallen, the propounder of the will and the beneficiary under it, was introduced as a witness on her own behalf, and, upon cross-examination, was asked by counsel for defendants in error the following questions: "Do you want to hold on to every particle of property that Mr. Wallen had, and prevent his children from getting a single dollar?" *A.* "I would like very much if they have anything to have the privilege of giving it to them. I don't want it wrung out of me against Mr. Wallen's will." *Q.* "Then, I understand that you want to hold on to all of his property if you possibly can?" *A.* "I think the papers ought to stand as they are." To each of these questions and the answers thereto, plaintiff, by counsel, objected, on the ground that they were irrelevant to the issue; but the court overruled the objection and allowed answers to be given.

In this we think there was error to the prejudice of plaintiff in error. The evidence did not bear upon any phase of the issues before the jury. It was not relevant to the execution of the paper offered for probate, nor to the issue of undue influence by which it was alleged that its execution had been procured. Its sole effect could have been to prejudice the witness in the opinion of the jury.

The third assignment of error is as to the admission in evidence of declarations of the testator not cotemporaneous with the execution of the will. We prefer to deal with this subject when we come to the consideration of the instructions given and refused.

The third, fourth, fifth and sixth bills of exception are to the admission of evidence with respect to the pecuniary condition of certain of the defendants.

We think the evidence admissible. A testator might, with great propriety, omit a child from participation in his bounty upon the ground that his pecuniary condition was such as to render any addition to his wealth unnecessary; and while we do not mean to say that a testator may not, with entire propriety, omit a child from participation in his bounty who is in need of assistance, we think the fact is one which may be rightfully considered as a circumstance in determining the validity of the testamentary disposition of property.

The fifth assignment of error is with respect to the testimony of a witness, Gustavus A. Paul, whose wife was a sister of the propounder of the will, and had been examined as a witness in behalf of the will. Counsel for contestants were permitted to show by this witness that he had been divorced from his wife on the ground of her wilful desertion. This tended to degrade her, and thereby to affect her credibility, and was not a proper mode of impeaching her as a witness. See *Uhl* v. *Com'th,* 6 Gratt. 706.

At the conclusion of the evidence, the plaintiff asked the court to give the jury certain instructions, marked "A" to "J," inclusive, and the defendants asked for instructions marked 13 to 30, both inclusive; and thereupon the court refused to give instructions marked "C," "E" and "H," and gave to the jury of its own motion, instructions 1 to 12 inclusive, and those offered by defendants marked 13 to 30, inclusive; whereupon plaintiff in error excepted to the refusal of the court to give instructions "C," "E" and "H" and to the giving by the court, of its own motion and at the request of defendants in error, of instructions marked 5, 6, 7, 9, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29 and 30.

Instruction C, asked for by plaintiff in error, and refused by the court, is as follows: "(a) The court instructs the jury that

the burden of proving that James A. Wallen was of sound mind at the time of the execution of the paper writing herein offered as his last will and testament, rests upon the propounder, Alice H. Wallen; and that it is incumbent upon her to establish that fact by a preponderance of testimony. (b) The court instructs the jury that undue influence, which is a species of fraud, must not be presumed, but must be clearly and strictly proved; and that the burden of such proof rests upon the contestants, J. H. Wallen and others; and that it is incumbent upon them to establish undue influence by a preponderance of testimony."

In lieu of the first branch of this instruction, the court gave instruction No. 5, which is as follows: "The court instructs the jury that the burden of proving the testamentary capacity of the said decedent, James A. Wallen, at the time of the execution of the said paper writing, rests upon the propounder, Alice H. Wallen, and that it is incumbent upon her to establish this fact to their satisfaction by clear proof." And the second clause of the instruction of plaintiff in error was met by the court by giving instruction No. 7: "The court further instructs the jury that undue influence (which is a species of fraud) must not be presumed, but must be clearly and strictly proved, and the burden of proving it rests upon those who allege it; but, if undue influence is proved by evidence, the burden of repelling such undue influence is on the propounder, Alice H. Wallen; in other words, the burden of proof in this case lies upon said propounder to satisfy the jury by evidence that the paper writing propounded is the last will of a free and capable testator."

The first clause of the instruction asked for by plaintiff in error was sufficiently liberal to the defendants. It is true that the propounders of a will have the burden placed upon them of proving the testamentary capacity of the decedent; but when a paper writing is offered to a probate court, and it is shown that the formalities required by the statute in such case made and provided have been complied with, and especially where it appears that the paper is wholly in the handwriting of and signed

by the testator—is in form an holograph will—there is a presumption of testamentary capacity. There is, indeed, a presumption in favor of the sanity of every man until evidence that he is of unsound mind is introduced; and this presumption applies in all cases, criminal as well as civil.

So it was held in *Temple* v. *Temple,* 1 Hen. & Munf. 476, a case decided just one hundred years ago and never since questioned, that "The circumstance that a writing, exhibited for probate as a last will and testament, was wholly written by the testator himself, is *prima facie* evidence that he was in his senses and able to make a will at the time of writing the same; so that the *onus probandi* to repel that presumption lies on those who wish to impugn it;" and "proof that the testator's intellects were greatly impaired by the use of opium and ardent spirits, and that, in consequence thereof, he was frequently incapable of business, is not sufficient to repel the presumption without proof that such was his condition at the time when the writing was executed."

It is axiomatic in law, and nowhere more firmly held than with us, that fraud, wheresoever and by whomsoever relied upon, is never presumed, but must be clearly proved; and this principle is correctly stated in the first part of instruction 7. It is followed up, however, by the statement that "if undue influence is proved by evidence, the burden of repelling such undue influence is on the propounder." If the defendants had introduced evidence sufficient to establish undue influence and no evidence had been introduced to the contrary, the verdict must have been against the will. But that is a very different thing from the burden of proof. That burden is always upon him who alleges fraud. In the case supposed, that burden would have been met and sustained, and to conclude that instruction with the statement that "the burden of proof in this case lies upon said propounder, to satisfy the jury by evidence that the paper writing propounded is the last will of a free and capable testator," makes the instruction, taken as a whole, misleading

and erroneous, because it leaves upon the propounder the burden of disproving the exercise of undue influence in procuring the execution of the will.

We are of opinion that the court should have given instruction C in both of its branches as asked for by plaintiff in error, and that, as applied to the facts of this case, it presents the law in terms as favorable as contestants could have expected.

There was, perhaps, no occasion to give instruction 26, as the proposition presented in it is sufficiently covered by other instructions; but it is not embraced in the bills of exception, and the objection to it made in the petition cannot be considered.

Instruction 16 is to the following effect: "The jury must consider the nature and character of the will, and if they find from the evidence that it is contrary to natural justice, they shall give this fact such consideration as they may deem proper in determining the question of the testator's capacity." In other words, if the jury should be of opinion that natural justice required that the testator should not have made his wife the sole legatee, but that his children should have participated in the distribution of the estate, they were at liberty, for that cause alone, to declare the testator wanting in testamentary capacity and to hold his last will and testament a nullity; which would be to say that the jury were at liberty to make a will in accordance with their ideas of natural justice.

The nature and character of a will may be considered as a circumstance, along with all other circumstances, affecting the testamentary capacity of the testator and the question of undue influence, but cannot of itself be sufficient to establish the want of testamentary capacity, or that the testator, in the execution of his will, was controlled by undue influence. The instruction, indeed, is plainly at war with other instructions given to the jury. (See instructions G and J, among others.)

What has been said with reference to instruction 16 applies also to instruction 30.

Instruction E, asked for by plaintiff in error and refused by

the court, is as follows: "The court instructs the jury that the influence which will vitiate a will must amount to force and coercion, destroying free agency. It must not be the mere desire of gratifying the wishes of another; that would be a very strong ground in favor of the testamentary act. Further, there must be proof that the act was obtained by coercion or importunity which could not be resisted; that it was done merely for the sake of peace so that the motive was tantamount to force and fear."

That instruction is supported by 1 Williams on Ex'ors, p. 39, and 1 Johns on Wills, p. 29, was approved in *Parramore* v. *Taylor,* 11 Gratt. 220, 239, a case of the highest authority, and it was error to refuse it.

This brings us to the consideration of instruction H, which was refused by the court. The court was asked to instruct the jury, "That while declarations of a testator not contemporaneously made with the execution of a will, are relevant evidence to show the feeling or affection of a testator towards the natural beneficiaries of his bounty, yet they are not admissible to establish the substantive fact of undue influence."

This presents for consideration an interesting question, which may affect several other instructions given, and we shall endeavor to state our views so as to settle the law upon the subject without referring to each particular instruction, and thus prolonging an already lengthy opinion.

The declarations of a testator, although not made contemporaneously with the execution of the will, are admissible, not only as showing his feeling or affection towards the natural beneficiaries of his bounty, as stated in the instruction, but are also relevant to show his mental condition with respect to his testamentary capacity; but are not admissible to establish the substantive fact of undue influence.

In 29 Am. & Eng. Ency. L., 117, it is stated that "Declarations of a testator, contemporaneous with the execution of the will, are admissible as part of the *res gestae* for the purpose of

showing the existence of undue influence. But declarations of a testator not contemporaneous with the execution of the will are generally held not admissible to establish the substantive fact of undue influence, since they are mere hearsay evidence, which, by reason of the death of the testator, can never be explained or contradicted by him."

In *Jackson* v. *Kniffin*, 2 Johnson (N. Y.) 33, 3 Am. Dec. 390, the opinion delivered by Judge Thompson, and concurred in by Chief Justice Kent and Justice Livingston, says: "This will might have been executed under circumstances which ought to invalidate it, but to allow it to be impeached by parol declarations of the testator himself, would, in my judgment, be eluding the statute, and an infringement upon well settled and established principles of law." And Judge Livingston, delivering a separate opinion, uses the following language: "I concur in the opinion just delivered, though, on the first reading of this case, my impressions were, that the testator's declarations, made in the moment of expected dissolution, should have been received, to establish the duress under which he acted. On more mature reflection, I am satisfied that they were properly rejected. Besides the danger of tampering with a person who may be known to have made his will; of fraud, in making use of some loose and unguarded expression to set it aside; and of perjury, in fabricating declarations, which may never have been made, and thus revoking a will by parol, the right of cross-examination is invaluable, and not to be broken in upon."

In *Stevens* v. *Vancleve*, 4 Wash. (U. S. C. C.) 262, Mr. Justice Washington states the law as follows: "The declarations of a party to a deed or will, whether prior or subsequent to its execution, are nothing more than hearsay evidence; and nothing could be more dangerous than the admission of it, either to control the construction of the instrument, or to support or destroy its validity. If the evidence is offered in support of the instrument, it could only have that effect upon the supposition of a uniform consistency of those declarations, not only

with the instrument itself, but with the secret intentions of the party, at all times after those declarations were made; and yet how unsafe a criterion would this be, when most men will acknowledge the frequent changes of their intentions respecting the disposition of their property by will, before they have committed them to writing. The uniform consistency of those declarations is the chief ground upon which the whole argument in favor of the evidence is rested; and yet, if the evidence be admitted at all, the plaintiffs would be at full liberty to prove opposing declarations of the testator at other times; and thus a door would be open to an inquiry in no respect pertinent to the main subject of investigation, but mischievously calculated to perplex and to mislead the jury. That such evidence has sometimes been given, is proved by many of the cases read by the defendant's counsel; but it would be very unsafe to consider those instances as laying down a rule of law, since, in none of them, was an objection made to the admission of the evidence, so as to submit its competency to judicial inquiry and decisions. The general rule of law is against the evidence, and no case has has been cited showing an exception to it, unless, when it was offered to repel a charge of fraud or circumvention of the devisee in obtaining the will."

In *Waterman* v. *Whitney,* 11 N. Y. (1 Kernan) 157, 62 Am. Dec. 71, the syllabus states that where the will is resisted on the ground that the testator was not of sound mind, or that it was procured by undue influence which involves his mental condition at the time it was executed, his subsequent statements, touching the disposition of his property and inconsistent with the will, in connection with other evidence tending to prove a want of mental capacity, are competent; that on these issues his declarations, made before the will was executed, are evidence under the same restrictions and for the same purpose; that such prior or subsequent declarations are competent evidence on these questions, only as tending to prove the testator's mental condition when the will was executed; but when, from

the remote period at which the declarations were made, or other cause, they do not legitimately bear upon the state of the testator's mind when the will was made, they should be excluded. These conclusions were reached after an examination of a great many English and American cases. The principle established seems to be that the declarations of the testator are admissible to show his mental condition or capacity, as well as his feelings or affections, but are inadmissible as proof of the substantive fact of undue influence.

The very recent case of *Throckmorton* v. *Holt,* 180 U. S. 552, 45 L. Ed. 663, 21 Sup. Ct. 474, contains a fuller view of the authorities bearing upon the subject. The court said: "After much reflection upon the subject, we are inclined to the opinion that, not only is the weight of authority with the cases which exclude the evidence, both before and after the execution, but the principles upon which our law of evidence is founded, necessitates that exclusion. The declarations are purely hearsay, being merely unsworn declarations, and, when no part of the *res gestae,* are not within any of the recognized exceptions, admitting evidence of that kind. Although, in some of the cases, the remark is made that declarations are admissible which tend to show the state of the affections of the deceased as a mental condition, yet they are generally stated in cases where the mental capacity of the deceased is the subject of the inquiry, and in those cases, his declarations on that subject are just as likely to aid in answering the question as to mental capacity as those upon any other subject. But, if the matter in issue be not the mental capacity of the deceased, then such unsworn declarations, as indicative of the state of his affections, are no more admissible than would be his unsworn declarations as to any other fact.

"When they are not part of the *res gestae,* declarations of this nature are excluded because they are unsworn, being hearsay only, and where they are claimed to be admissible, on the ground that they are said to indicate the condition of mind of

the deceased with regard to his affections, they are still unsworn declarations, and they cannot be admitted if other unsworn declarations are excluded.    In other words, there is no ground for an exception in favor of the admissibility of declarations of a deceased person as to the state of his affections, when the mental or testamentary capacity of the deceased is not in issue.    When such an issue is made, it is one which relates to a state of mind which was involuntary, and over which the deceased had not the control of the sane individual, and his declarations are admitted, not as any evidence of their truth, but only because he made them, and that is an original fact from which, among others, light is sought to be reflected upon the main issue of testamentary capacity.    The truth or falsity of such declarations is not important upon such an issue (unless that, for the purpose of showing delusion, it may be necessary to give evidence of their falsity), but the mere fact that they were uttered, may be most material evidence upon that issue. The declarations of a sane man are under his control, and they may or may not reflect his true feelings, while the utterances of the man whose mind is impaired from disease or old age are not the result of reflection and judgment, but spontaneous outpourings, arising from mental weakness or derangement.    The difference between the two, both as to the manner and subject of the declarations, might be obvious.    It is quite apparent, therefore, that declarations of the deceased are properly received upon the question of his state of mind, whether mentally strong and capable, or weak and incapable, and that, from all the testimony, including his declarations, his mental capacity can   probably   be   determined   with   considerable   accuracy. Whether the utterances are true or false, cannot be determined from their mere statement, and they are without value as proof of their truth, whether made by the sane or insane, because they are, in either case, unsworn declarations."

In *Shailer* v. *Bumstead,* 99 Mass. 112, it is said:   "Intention, purpose, mental peculiarity and condition are mainly as-

certainable through the medium offorded by the power of language. Statements and declarations, when the state of the mind is the fact to be shown, are, therefore, received as mental acts or conduct. The truth or falsity of the statement is of no consequence."

In *Gibson* v. *Gibson,* 24 Mo. 227, it is said that declarations of the testator were admitted, when it was proposed to show the condition of the testator's mind, or to show the state of his affections, but never as a mere narrative of facts.

We are of opinion, therefore, that declarations of the testator, not made contemporaneously with the execution of his will, are relevant evidence, to show his feelings and affections towards the natural objects of his bounty, his mental condition as reflecting upon his testamentary capacity, but are not admissible to establish the substantive fact of undue influence.

There are many other instructions to which objection was taken. Some of them are unnecessary, as being merely iterations of propositions of law already sufficiently presented; some of them are objectionable, as giving undue prominence to particular facts. But we think we have said enough to indicate our view of the law.

We again call attention to what this court has said on more than one occasion, with respect to the danger of multiplying instructions. Every instruction unnecessarily given, increases the chances of reversal. Thirty instructions were given in this case, when, as it seems to us, a few elementary principles of law, thoroughly established by the decisions of this court, would have been sufficient to guide the jury to a correct conclusion.

We are of opinion that the order of the chancery court should be reversed, the verdict set aside, and the case remanded for a trial *de novo.*

*Reversed.*