# Richmond

THOMAS DALEY SAVAGE, ET ALS. V. GRACIE V. NUTE, ET ALS.

December 7, 1942.

Record No. 2597.

Present, Holt. Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Ashton Dovell* and *John T. Wingo,* for the appellants.

*John P. Flanagan* and *Robert L. Hicks,* for the appellees.

GREGORY, J., delivered the opinion of the court.

This litigation involves the legality of a paper purporting to be the last will and testament of Ida S. Cole, who departed this life on July 1, 1939. The paper was executed on October 4, 1937, and, on July 5, 1939, it was offered for probate before the clerk of the Circuit Court of the city of Williamsburg and county of James City, Virginia. The paper was there duly probated as the last will and testament of Ida S. Cole, and Fred R. Savage qualified as executor, he having been so designated by the testatrix.

Gracie V. Nute, a niece of the testatrix, filed a bill in which she alleged that Ida S. Cole lacked testamentary capacity at the time of the execution of the will, and also that the will was the result of undue influence exerted over her by Fred R. Savage.

In May, 1941, a jury trial was had which resulted in a mistrial. Gracie V. Nute then asked for a change of venue, which was denied; however, the court granted a change of venire and a jury was summoned from the county of

Gloucester for the second trial. This trial resulted in a verdict that the writing in question was not the true last will and testament of Ida S. Cole. The verdict was approved by the court below, and the case is here upon a writ of error. Numerous points are made concerning the instructions granted, and the exclusion of certain alleged material testimony of ten witnesses. It is also claimed that the verdict is not supported by the evidence.

Fred R. Savage died on February 18, 1942, and his widow, Lorna Daley Savage, qualified as executrix under his will. Consequently she unites in the petition for the appeal.

Mrs. Cole, who was about 67 years of age, was the widow of Robert R. Cole. He died in 1903. Their only child was Robert who died unmarried in 1936. Mrs. Cole resided on her farm which was not far from Williamsburg. No relative lived with her. She sometimes had a colored woman servant in the home, and one or more white men to work the farm. She sold butter, eggs and other produce to those who came to her home to make their purchases. She had regular customers among whom was Fred R. Savage, the President and Treasurer of Peninsula Bank and Trust Company of Williamsburg. For 10 or 12 years prior to the death of Mrs. Cole, he purchased eggs and butter from her once or twice a week, always going to her home for that purpose.

Mrs. Cole had had a substantial savings account at the Peninsula Bank for a number of years. She also had a safe deposit box there. Mr. Savage had, on one occasion, purchased for her certain bonds and placed them in her safe deposit box, the key to which he held. She never went to the bank.

By the will, which is the subject of this contest, Mrs. Cole left a legacy to her niece, Mary Otey, of $2,000. To another niece, Bessie Epperson, she left a legacy of $500, and legacies of $500 to each of the following: William J. Hanrahan, John Settle, Shirley Jane Banks and Robert P. Banks. Excepting Mary Otey and Bessie Epperson, all of the other legatees and devisees were not related by blood, or marriage to the testatrix. The residuum of the personalty, which was

later appraised at more than $20,000 was left to Thomas Daley Savage, son of Fred R. Savage. The testatrix left her real estate which was valued at $6,000 to Fred R. Savage.

The will was drawn by Mr. Channing M. Hall, an attorney of unquestionable integrity, of Williamsburg, Virginia. He and his secretary, Miss Mary L. Pitman, signed the will as subscribing witnesses.

Fred R. Savage testified that Mrs. Cole had spoken to him about making her will. He told her that "she could take a blank piece of paper and write anything she wanted on it." She stated to Savage that she wanted "one that they can't break", whereupon he suggested that she have a lawyer draw her will. She then requested Savage to ask Mr. Hall to draw her will. Mrs. Cole outlined to Savage how she wanted her will prepared and he wrote notes in accordance with her direction on the back of a calendar which he took from his pocket. This occurred on October 2, 1937. Until then he had no information that he and his son would be devisee and legatee, respectively, under her will.

The memorandum, written on the back of the calendar, was delivered to Mr. Hall by Savage, who explained to Mr. Hall that Mrs. Cole wanted him to prepare the will, and, on Monday, October 4, 1937, he dictated the will to his secretary, Miss Pitman, who, in turn, typed it. In preparing the will, Mr. Hall left the name of the executor blank, and, later he and Miss Pitman took the will to the home of Mrs. Cole about 3 P. M. on October 4, 1937.

When they arrived, several persons were at Mrs. Cole's home. Mr. Hall's presence was announced, and Mrs. Cole directed that he come to her bedroom where she was then confined. He gave her the draft of the will, and she read it and stated that it was exactly what she wanted. She was quite deaf at the time and Mr. Hall communicated with her in part by the use of pencil and paper. He inquired whom she wanted as executor. Savage had suggested his bank but she selected Savage as executor. Thereupon, his name was inserted in the blank space.

Miss Pitman was then called to the room as a witness to the will and, after her arrival, Mr. Hall inquired of Mrs. Cole if the paper represented her will, to which she responded in the affirmative. Then he asked if she wanted Miss Pitman and Mr. Hall to sign as witnesses, to which she also responded in the affirmative. She then signed the will in the presence of Miss Pitman and Mr. Hall and they signed as subscribing witnesses in her presence and in the presence of each other. Mr. Hall, after telling Mrs. Cole that she could change her will at any time she desired, placed the will in an envelope, sealed it, and noted on the envelope the date and maker of the will. In accordance with directions from Mrs. Cole, he left the will at the Peninsula Bank and Trust Company for safe-keeping.

Mrs. Cole lived until July 1, 1939, some twenty-one months after making the will.

The testimony of Mr. Hall, Miss Pitman and Fred R. Savage, from which the foregoing facts have been stated regarding the preparation and execution of the will, is not contradicted.

The attack upon the will, as we have seen, was grounded upon (1) mental incapacity of the testatrix, and (2) upon undue influence exerted upon the testatrix by Mr. Savage. The trial court, in its opinion, held that the contestant practically abandoned the charge of mental incapacity to make the will. The court stated that the contestant relied principally upon undue influence and the presumption of fraud which arose from the alleged confidential relation existing between Mrs. Cole and Fred R. Savage.

We think the evidence introduced was sufficient to carry to the jury the two issues raised by the pleadings, and if the jury had been properly instructed and no other prejudicial error had appeared, they could have found a verdict either for or against the validity of the will which would have been sufficiently sustained by the evidence. This conclusion renders it desirable that we refrain from further comment on the evidence except when it is necessary to do

so in connection with our discussion of the assignments of error.

The first assignment of error is directed to the action of the court in rejecting the testimony of ten witnesses offered by the proponents of the will.

At the beginning of the trial, the attorney for the proponents stated that he intended to make out a *prima facie* case and rest. He proved the due execution of the will, but, instead of then resting, he offered the testimony of several other witnesses who testified concerning the mental capacity of Mrs. Cole and her ability to carry on her business affairs, and developed his case to an extent beyond the *prima facie* case which he had first stated he would prove. The contestant then put on all of her evidence. At the conclusion of her evidence the proponent then offered the testimony of the ten witnesses, which the trial court excluded on the ground that to admit the testimony of those witnesses, except for rebuttal purposes, would upset the orderly procedure of the trial and that such testimony was, at most, only cumulative.

In cases of this kind, the general rule seems to be that the proponent of a will has the option to either make out a *prima facie* case and rest, or he may develop his whole case in chief. *Rust* v. *Reid*, 124 Va. 1, 97 S. E. 324; *Hentz* v. *Wallace's Adm'r*, 153 Va. 437, 150 S. E. 389; *Grimes* v. *Crouch*, 175 Va. 126, 7 S. E. (2d) 115.

At the trial there seemed to be some difference of opinion between counsel as to what constituted a *prima facie* case. Some of the witnesses, whose testimony has been excluded, were in position to have narrated important facts to the jury. One of them, Mrs. Lovelace, was employed at the time the will was executed as a nurse for Mrs. Cole and had been with her for a week or more prior to the execution of the will. Her testimony, no doubt, would have been of considerable value. She stated that Mrs. Cole was unquestionably of good mind and able to attend to her business transactions. She also stated that Mrs. Cole was not easily influenced by other people. Several other witnesses were in good position to have information concerning the issue that was being tried

before the jury and whose testimony the jury did not have. A casual reading of the testimony of these witnesses discloses that their testimony would have been of great value to the proponents. If it had been admitted, it would likely have had some influence upon the minds of the jurors and we think that the failure to admit it resulted in a failure to give the jury the benefit of all of the important testimony.

Ordinarily, the trial court may exercise its discretion in the admission or rejection of testimony and its action will not generally be reviewed by this court. But in this case it is apparent that these witnesses were available to give the jury facts that would have aided them in determining the material issues, had they been allowed to testify. We think the court, in its discretion, should have admitted the testimony. A party ordinarily should not be deprived of substantial rights simply because his counsel may have violated rules concerning the orderly introduction of testimony. After all, the desire of all courts is to give each side a fair trial by allowing the jury to hear all pertinent and available testimony. Rules of procedure are necessary but courts should be slow to enforce them when to do so will amount to a denial of justice. The exclusion of this testimony was reversible error.

Instruction B, granted at the request of the contestant, first laid down the proposition that Mrs. Cole had the right to change or revoke her will at pleasure. Then it directed that if the jury believed "she advised Fred R. Savage that she had decided to change the terms thereof and that she requested him to bring the will to her in order to destroy it or to change the terms thereof and that Savage had possession of the will * * * and he refused or failed to deliver same to her as requested, you may consider this evidence as bearing upon the undue influence or fraud, if any, of the said Fred R. Savage".

The only evidence which could even tend to support this instruction was that of Mrs. Otey, who undertook to testify as to a declaration of the testatrix made long after the will was made, to the effect that she heard Mrs. Cole tell Savage

"she wanted him to send a lawyer back to change her will because she wasn't satisfied, and she didn't want the same lawyer that made the other one". This was positively denied by Savage.

It is well settled in Virginia that the declarations of a testator made either before or after the execution of his will are not admissible to establish the substantive fact of undue influence. *Wallen* v. *Wallen*, 107 Va. 131, 57 S. E. 596; *Core* v. *Core's Adm'rs*, 139 Va. 1, 124 S. E. 453.

In addition to this the language of the instruction goes beyond the evidence. There was no evidence that Mrs. Cole ever directed Savage to return her will in order that she might change it. If the declaration were admissible and believed, the most that could be said about it was that she wanted to change her will and wanted another lawyer to make the change. She did not direct Savage to return the will. He did not "fail to deliver the will to her as requested" and that language in the instruction was not supported by the evidence.

Instruction D, granted at the request of the contestant, is open to the objection that it unduly emphasizes such elements as mental weakness, affliction and disease of the testatrix to the exclusion of other essentials and tempts the jury to draw the influence that undue influence was exerted by reason of the mere existence of mental weakness, affliction and disease alone.

In addition, it is observed that another instruction was given embodying the same thought. It was designated as Instruction I, and it is subject to the same criticism as is directed at Instruction D. Besides duplication of instructions should be avoided.

Instruction F outlined an abstract proposition of law and no application of the law embodied therein was made to the particular facts of this case. It defined undue influence and was more or less a repetition of other instructions.

Instruction H reads as follows: "The court instructs the jury that if you believe from the evidence that at the time the will in question was made, Fred R. Savage stood in a

relation of trust, confidence or dependence towards Mrs. Cole and that by her will she left the bulk of her estate to the said Fred R. Savage and his son, this in itself raises a presumption of fraud and undue influence, which must be overcome by satisfactory evidence before the will should be allowed to stand as the true last will and testament of the testator."

The chief objection to the instruction is that it outlines an erroneous statement of the law. Under it the jury were told that if Savage was the main beneficiary and he stood in a relation of trust or confidence to Mrs. Cole, these facts alone were sufficient to raise a presumption of fraud and undue influence.

This instruction was taken from the case of *Culpepper* v. *Robie*, 155 Va. 64, 154 S. E. 687. But there the facts were different from those in the case at bar. There the evidence disclosed that the testator had previously expressed an intention to otherwise dispose of his property. There had been two previous wills inconsistent with the one being contested. No such facts appear here. Again, generally where such an instruction as has been offered, it has been largely predicated upon the added fact that the person who stood in the confidential relation took some active part in the drafting and execution of the will. Here, Savage took no part in either, other than to give the draftsman a memorandum of the provisions to be placed in the will, which memorandum was made at the direction of the testatrix two days before the will was executed. He was not present at the drawing of the will or present at its execution. The will was drawn by Mr. Hall in accordance with the express wish and desire of Mrs. Cole, communicated to him by Savage.

It is true there was evidence tending to disclose a relation of confidence and that Savage attended to the financial affairs of Mrs. Cole. But the instruction did not embrace the thought that the jury might believe that Savage took advantage of his confidential relationship, if it existed.

The similar instruction given in the *Culpepper case* was criticised by this court and it was held error to have given it,

but, under the facts of that case, the majority of the court did not think it was reversible error.

We are of the opinion that Instruction J-1 was improper and not applicable. The fact that Hall, the attorney, represented the bank of which Savage was president, and that Savage gave Hall the information from which the latter prepared the will, should not have been emphasized and singled out as tending to establish undue influence, when there is not the slightest circumstance in the evidence which would tend to show, either expressly or impliedly, that Hall was in any way connected with the alleged wrongdoing of Savage. Yet, from the instruction, the jury could have implied that Savage and Hall were acting in concert. No intimation of that kind, or recital in the instruction from which it could be deduced, should have gone to the jury because there was no evidence to support it.

Instruction U was erroneous in this case. The burden of proof to establish undue influence is always upon the contestant. This was expressly held in *Wallen* v. *Wallen*, 107 Va. 131, 57 S. E. 596, and an instruction substantially like the one here was disapproved.

The contestant relies heavily upon *Culpepper* v. *Robie*, 155 Va. 64, 154 S. E. 687; *Redford* v. *Booker*, 166 Va. 561, 185 S. E. 879, and *Barnes* v. *Bess*, 171 Va. 1, 197 S. E. 403. A consideration of these cases will at once disclose a great difference in the facts from those in the case at bar. Will cases must of necessity be decided upon their own peculiar facts with the application of general and well settled principles of law. No two cases are alike and it is not always suitable to take instructions from a decided case and attempt to fit them into the case which is being tried.

The instructions were voluminous, twenty-four in all. Such a great number of instructions might easily confuse a jury. The practice of multiplying instructions has been condemned time and again.

Keith, P., in *Wallen* v. *Wallen*, *supra*, speaking for the court, had this to say: "We again call attention to what this court has said on more than one occasion, with respect to the

danger of multiplying instructions. Every instruction unnecessarily given, increases the chances of reversal. Thirty instructions were given in this case, when, as it seems to us, a few elementary principles of law, thoroughly established by the decisions of this court, would have been sufficient to guide the jury to a correct conclusion."

That injunction aptly applies here, and when this case is tried again we hope it will be heeded.

The decree of the trial court is reversed and the verdict of the jury set aside for the exclusion of testimony offered by the plaintiffs in error and for erroneous instructions given. The case is remanded for a new trial.

*Reversed and remanded.*