## Richmond.

## MONTAGUE AND WIFE v. ALLAN'S EX'OR AND ALS.

### February 14th, 1884.

1. WILLS—*Devisavit vel non—Exceptions.*—Upon the trial of an issue *devisavit vel non*, the mode of proceeding is substantially the same as upon the trial of common law actions. Where parties submit to the rulings of the court without exception, they cannot be heard here, and now to insist on the error, if any, as ground of reversal. *Lambert* v. *Cooper's Ex'or*, 29 Gratt. 66.

2. TESTAMENTARY CAPACITY—*Old age—Memory.*—If failure of memory be merely such as is incident to old age, it does not affect testamentary capacity.

3. IDEM—*Physicians.*—Physicians are considered as occupying high grade as witnesses as to testamentary capacity, especially a physician who has attended the patient through the disease which is supposed to have disabled his mind. *Cheatham* v. *Hatcher*, 30 Gratt. 65.

4. NEW TRIALS.—When some evidence has been given which tends to prove the fact in issue, or the evidence consists of circumstances, or presumptions, a new trial will not be granted merely because the court if upon the jury would have given a different verdict. *Grayson's Case*, 6 Gratt. 712.

5. WILLS—*Knowledge of contents.*—The jury must be satisfied that the testator knew the contents of the will at the time of executing it; but they may be so satisfied, and such knowledge may be proved by circumstantial evidence, direct evidence not being indispensable.

6. IDEM—*Confidential relations.*—A will is not invalidated by the mere fact that it was written by the attorney, agent, physician, priest or other confidential adviser of the testator, who is himself a beneficiary; though such relations may engender a suspicion and arouse the vigilance of the court and jury, and if unexplained or repelled, might annul the transaction.

Appeal of D. P. Montague and Genevieve, his wife, formerly Genevieve Allan, from decree of chancery court of

city of Richmond, pronounced February 24th, 1883, in suit
wherein appellants were plaintiffs, and George W. Mayo,
executor of Louisa G. Allan, deceased, and others, were de-
fendants.   The object of the suit was to annul the instru-
ment propounded as the will of the decedent, and the issue
was "*devisavit vel non*," and the complaint is of the ver-
dict and the decree founded thereon, which were in favor
of the defendants.   Opinion states the facts.

*Joseph Christian* and *John Lyon*, for the appellants.

*Jones, Kean & Nelson*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

On the 2d of April, 1881, Mrs. Louisa G. Allan, of Rich-
mond, executed and acknowledged her last will and testa-
ment—a paper drawn by Mr. George W. Mayo, who was
named as one of the executors, and whose wife was a large
beneficiary.   The testatrix died on the 24th of the same
month.   The will was admitted to probate by the chancery
court for the city of Richmond April 27th, 1881, when Geo.
W. Mayo qualified as executor.

On September the 5th, 1882, Miss Genevieve Allan (who
since the institution of the suit has intermarried with D.
P. Montague) exhibited her bill in the said chancery court,
in which, after reciting the probate of the paper aforesaid,
and stating that she is one of the three heirs-at-law and dis-
tributees of Louisa G. Allan, deceased, she alleged that Mrs.
Allan, when she signed and acknowledged the will or
testamentary writing aforesaid was insane; that she was
not of sound mind; that she was mentally incompetent to
make a lawful will, and that the paper in question was pro-
cured by George W. Mayo, who was the confidential agent
and adviser of the testatrix, by the selfish exercise of undue

influence over her mind, enfeebled by injuries, disease and age.

Mayo, his wife and some other defendants, answered the bill; the cause was matured; and the chancellor directed the trial of an issue, *devisavit vel non,* at the bar of the court. At the close of the evidence, of which a great deal, both oral and written, was introduced before the jury, the plaintiffs in the issue (the appellees here) requested the court to give certain instructions, which the court did give, without objection or exception from the defendants in the issue (the appellants). Upon the trial of the issue, the jury failed to agree upon a verdict; but upon a second trial, at a subsequent term of the said court, the jury found a verdict sustaining the said paper of April 2d, 1881, in all its parts and provisions, as the true last will and testament of Louisa G. Allan, deceased. Upon the recordation of this verdict, the defendants in the issue moved the court to set aside the verdict of the jury and to grant a new trial on the said issue; and the court took time to consider thereof. On the 24th February, 1883, the court overruled the said motion to set aside the said verdict of the jury and to grant a new trial on the issue directed in the cause; and pronounced its decree, in conformity with the said verdict of the jury, that the will of the testatrix, Louisa G. Allan, admitted to probate in the said court on the 27th day of April, 1881, is the true last will and testament of Louisa G. Allan, deceased; and the court dismissed the bill of the complainants with costs. From this decree the appeal is taken, and this court is now to decide whether there is error in the proceedings of the court below, as disclosed by the transcript of the record in the cause.

That the will was properly executed, according to the statute, there is no room for contention, and there is none: it was signed, sealed and acknowledged by the testatrix, in the presence of two witnesses, who, at her request, in her

presence, and in the presence of each other, affixed their signatures as attesting witnesses. The statute was complied with in every particular.

The *instructions* given by the court are not complained of. They were not excepted to by either plaintiffs or defendants in the court below; in fact, they were accepted, and acquiesced in by both sides; and they correctly expound the law of the case. No exceptions having been taken to the instructions, neither party will be allowed to question here the correctness of the law laid down by the court as applicable to the evidence in this cause. *Lamberts* v. *Cooper's Ex'or*, 29 Gratt. 66.

The validity of Mrs. Allan's will is disputed on two grounds—first, that she was insane and mentally incapable of making a lawful will at the time that she executed it; and, secondly, that it was made under the improper or undue influence of George W. Mayo, who wrote it; who is named as executor; who was the confidential agent and adviser of the testatrix, and whose wife is the principal beneficiary. All the facts proved in the cause are certified in the record, and the proofs show that the contestants' own witnesses all testified to the intelligence and capacity of the testatrix when her attention was fixed; they contain no hint of insanity, but, on the contrary, they show a testatrix of uncommon intelligence, business capacity, self-reliance and will, who, recently before her death, undertook and intelligently conducted intricate and tedious business transactions, and who to the day of her dissolution—certainly to within two or three days of her death—retained her clear intellect and controlled and directed her domestic affairs. The certificate of facts says: "All of these witnesses (for the contestants) described her failure of memory only as the forgetfulness of old age, and none of them doubted her intelligence and capacity when her attention was fixed." As to the failure of memory, the authorities

are explicit that, if it be merely such as is incident to old age, it does not affect testamentary capacity. *Eddy's Case,* 32 N. J. Eq. 701; *Zoe* v. *McCord,* 74 Ill. 33.

We think that the testimony of the contestant's own witnesses fully proves that the testatrix was both sane and capable of making the will. But the propounders of the will proved that Mr. Ellyson, an educated lawyer, who was called in to attest the execution of the will, with the view of testing her testamentary capacity, conversed with her on the occasion when she executed the will, and was perfectly satisfied as to the condition of her mind; that he "was perfectly certain of her capacity to make a will, and was so struck with her mental vigor, for one of her age, that he remarked on it when he got home." Mr. Hopkins, the other subscribing witness, "is certain that Mrs. Allan was in her right mind, and was competent to make a will." On or about the 20th or 25th of March, 1881, Dr. McGuire was again sent for to cut a cancer from Mrs. Allan's other breast (he having performed that operation in 1875 upon one of her breasts), he consulted with Dr. Harris, her regular family physician, and talked freely with her, when her "mind clearly grasped and her courage bravely faced the alternative before her—death certain in the not remote future in one event; death tedious, lingering, loathsome, in the other event; death under the knife, possibly, speedy but painless; that she made deliberate, intelligent and voluntary choice." On April 1, 1881, he called to see her, and found her in the hall, with the pictures, which had hung on the walls, lying about, when she apologized for the confusion, saying she was making some dispositions of the pictures in case she should die; and, nearly to the last— "certainly to within two or three days of her death—she retained her clear intellect." Dr. McGuire had no doubt of her testamentary capacity down to three days before her death, when process of dissolution had commenced. Drs.

Harris and McGuire, with whom Dr. Cunningham agreed, so far as he knew her, considered her a woman of remarkably strong mind and will, which remained unimpaired up to the time of her dissolution; and, in their opinion, she could not have been controlled into making a will which she did not want to make. These three physicians, all gentlemen of high personal and professional character, had been medical attendants upon Mrs. Allan, and two of them during her last illness. "Physicians are considered as occupying a high grade on such questions, . . . especially a physician who has attended the patient through the disease which is supposed to have disabled her mind." *Cheatham* v. *Hatcher*, 30 Gratt. 65.

Miss Jennie Galt testified that she corresponded regularly with Mrs. Allan for many years up to a few weeks before March 4th, 1881, and that she saw in Mrs. Allan's letters, written with her own hand, no signs of a failing mind or memory. Mr. Hoffman Allan, a grandson of Mrs. Allan, and one of her three heirs at law, testified that he had once asked her to give him the house she lived in, and twice for the parlor curtains; that she refused to give him the house, saying "she intended to give that to those who needed it more"; that he declined to claim against the will propounded; and that he believed the same to be the true last will of his grandmother.

Miss Louisa G. Allan, the sister of Hoffman Allan, a grandchild of the testatrix, and one of her three heirs at law (who was introduced by the contestants), testified that she lived with Mrs. Allan as a member of her family, and that her grandmother was capable of making a will to the last of her life. This witness, now in her twentieth year, would, together with her brother, Hoffman Allan, if the will were annulled, take, by descent, two-thirds of the entire estate.

It is impossible to resist the conclusion, to which we are

compelled by these facts in the record, that the testatrix was wholly and unquestionably competent to make her will when she executed the paper in controversy April 2d, 1881.

But the appellants contend, that the decedent, "at the time of executing the said paper," did not know the contents of the said paper, and did not understand the disposition thereby made of her property; that she was subjected to the undue influence of George W. Mayo, who drew the will, who was present and procured its execution against her free will and purpose; that the jury, in finding for the will, disregarded the instructions of the court, and found a verdict plainly contrary to the law, as expounded, and the facts, as certified by the court.

The court, which gave the instructions to the jury, approved the verdict found, and refused to set it aside, as being neither contrary to the law nor the evidence which had gone to the jury. Judge Christian, speaking for this court in *Blosser* v. *Harshbarger*, 21 Gratt. 216 (citing *Krugh* v. *Shanks*, 5 Leigh, 598), says: "In the appellate court there is superadded to the weight, which must always be given to the verdict of a jury, fairly rendered, that of the opinion of the judge who presided at the trial, which is always entitled to peculiar respect, upon the question of a new trial. The whole case was one peculiarly proper to be submitted to a jury, who are the proper judges of the weight of the evidence, and the verdict having been fairly rendered, and approved by the judge before whom the case was tried, it would be a violation of well settled principles of law so often adjudicated by the courts, as well as an unwarranted abuse of the appellate powers of the court, to set aside the verdict and judgment, because the judges of this court might not concur with the verdict of the jury, upon the facts as they are certified here." Judge Scott, in *Grayson's Case*, 6 Gratt. 712, said, where "some evidence

has been given which tends to prove the fact in issue, or the evidence consists of circumstances, or presumptions, a new trial will not be granted, merely because the court, if, upon the jury, would have given a different verdict."

In *Patteson* v. *Ford*, 2 Gratt. 24, Judge Baldwin said, "much respect is due to the opinion of the jury, whose province is to weigh conflicting evidence, to scan the credit of witnesses, to estimate the force of circumstances, probabilities and presumptions, and to canvass intentions and motives. This is so evident that the courts habitually defer to the conclusions of juries upon matters of fact, though opposed to their own; and hence the rule not to disturb a verdict, unless in case of plain deviation from the evidence." It is contended by the appellants, that beside the fact that the will was written by George W. Mayo, he produced it on the occasion of its execution, and Mrs. Allan signed and acknowledged it, without reading or having it read to her.

It is true that the will was not read by or to Mrs. Allan *when* she signed it; but it does not, therefore, follow that she had not read it and was not fully aware of its contents and provisions. The jury must be satisfied that the testatrix knew the contents of the will at the time of signing and executing it, and they were, in this case, so explicitly instructed by the court; but the authorities are full and conclusive that they may be *so satisfied*, and that such knowledge may be proved by *circumstantial* evidence, and that *direct evidence* is not indispensably necessary. In the case of *Barry* v. *Butlin* (1 Curtis, 6 Eng. Ecc. R. 417), Park, B., said: "Nor can it be necessary that in all such cases, even if the testator's capacity is doubtful, the precise species of evidence of the deceased's knowledge of the will is to be in the shape of instructions for, or reading over, the instrument. They form, no doubt, the *most* satisfactory, but they are not the *only* satisfactory description of

proof by which the cognizance of the contents of the will may be brought home to the deceased."

In *Crispell* v. *Dubois,* 4 Barb. 393, Harris, J., after stating that it would have been more satisfactory to have had evidence that the testatrix gave instructions for drawing the will, or that it was read by or to her, says : "But although such evidence would unquestionably have been the most satisfactory, I am not prepared to say that it was indispensable. I have been able to find no case in which this particular description of proof has been required. On the contrary, I understand the doctrine to be well settled that while it is necessary in such cases to prove that the will is the 'spontaneous intention' of the testator, such proof may be made out in any mode in which his real intentions can be ascertained." In *Raworth* v. *Marriott,* 2d Eng. Ch. R. 644, Sir John Leach, M. R., held that the jury who tried the validity of the will must be satisfied that the testator knew its contents, but their consideration need not be confined to *direct* evidence, and they may find for the will on circumstantial evidence only.

In *Donney* v. *Murphey,* 1 Dev. & Batt. p. 91–2, Ruffin, C. J., says " there are other circumstances equally satisfactory—such as the conformity of the will to previous or subsequent declarations, or to such dispositions as the party would be prompted, by natural affection, to make."

The appellants insist that Mayo's confidential relations to the testatrix, coupled with the facts that he wrote the will, and that his wife is the principal beneficiary, raise a conclusive presumption against the validity of the paper. Such circumstances certainly engender suspicion and arouse the vigilance of the court and jury, and, if unexplained or repelled, they would annul the transaction. There is a well recognized distinction between the rule affecting *testamentary* gifts, and gifts *inter vivos ;* and it is now well settled by an unbroken current of authority—both English

and American—that a *will* is not invalidated by the mere fact that it was written by the attorney, agent, physician, priest, or other confidential adviser of the testator, who is himself a beneficiary. *Daniel* v. *Hill*, 52 Alabama, 430; *Crispell* v. *Dubois* (*supra*); *Barry* v. *Butlin* (*supra*).

In the light of these authorities, the facts appearing in this record afford satisfactory evidence that Mrs. Allan, the testatrix, knew the contents of the will when she executed it.

They show a testatrix of sound mind and strong will; they disclose testamentary dispositions in accord with her affections and with her repeated declarations; they prove that she marked her pictures preparatory, as she said, to disposing of them, and that her will refers to and disposes of them by means of marks; that she acknowledged the paper to be her will after its execution, and that it remained in her possession from the time of its execution to the day and event of her death. It is but just to George W. Mayo to add that, although the will was written by him, and his wife is the chief beneficiary under it, yet that wife was the child of the beloved and favorite sister of Mrs. Allan, lived in her home with her, and was unto her as a daughter; and that, in fact, she takes no greater benefit under the will established than she did under the olograph will of 1876.

We are of opinion that the paper executed by Mrs. Allan for her will, April 2d, 1881, and duly probated as such April 27th, 1881, in the chancery court of Richmond city, is the true and last will of the testatrix aforesaid; that the verdict of the jury was right; that there is no error in the decree appealed from, and that the same must be affirmed.

DECREE AFFIRMED.