# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

MILLER V. RUTLEDGE AND ALS.

FEBRUARY 10th, 1887.

1. INSANITY—*Legal presumption—Burden of proof.*—The legal presumption is that all men are sane. The burden of proof is on the alleger of insanity.

2. LEGAL CAPACITY—*Definition—Volition.*—Legal competency to act is the possession of mental capacity sufficient to transact one's business with intelligence, and understanding of what he is doing. Mere weakness of understanding is no objection to a man's disposing of his own property. The test of legal capacity is said to be that the party is capable of recollecting the property he is about to dispose of, the manner of distributing it, and the objects of his bounty; the particular act being attended with the consent of his will and understanding.

3. IDEM— *raud—Undue influence—Case at bar.*—Here the evidence shows that R., a person whose two contracts it was the object of the suit to annul, on the ground of mental incapacity and undue influence, was illiterate and of weak intellect, delicate physical condition, and indolent habits; but it utterly fails to show that he was of unsound mind and incapable of managing his own affairs; or that there was any unfair dealing or other thing for which those contracts should be invalidated.

Argued at Wytheville.   Decided at Richmond.

Appeal from decree of circuit court of Montgomery county, rendered May 29, 1884, in the case of George W. Fagg, as committee of Joseph G. Rutledge, an insane person, plaintiff, against Charles H. Miller, H. D. Wade, Margaret Miller, wife of Charles H. Miller, and another, defendants.

The object of this suit was to annul a trust deed executed by Joseph G. Rutledge, November 14, 1874, conveying to H. D. Wade, trustee, a tract of land in said county, containing 108 acres, to secure to C. H. Miller a debt of $425, evidenced by two bonds of Mrs. M. J. Craig and Joseph G. Rutledge, one for $200 at one year, and the other for $225 at two years, with interest, being the price of two mares and a wagon and harness; and also to annul a contract of bargain and sale of said land made by Joseph G. Rutledge in July, 1881, to C. H. Miller, in consideration of $1,800, of which part was paid with the debt secured to Miller by said trust deed, and by a judgment in favor of Miller against Rutledge for $50, interest and costs, by taxes paid by Miller on the land, and by $60 cash, leaving a balance of $1,030, for which C. H. Miller executed his bonds payable to Joseph G. Rutledge, and which remain unpaid; and also to annul any deed which Rutledge may have made to Mrs. Margaret Miller, or other person, by reason of his said contract.

The grounds alleged for such annulment are: that at the date of said trust deed and of said contract and deed of conveyance, Joseph G. Rutledge was mentally incapable of transacting his own business, or taking care of his property, and was easily influenced by any one in whom he had confidence; and that Mrs. Craig, who was his sister, had influenced him to sign her said bonds as her surety, and that C. H. Miller had induced him to enter into said contract, and to make said conveyance of his said land, which was the only property he owned, for a professed consideration of $1,800, whilst the land had been assigned to him out of his father's estate at $2,700, and was worth that sum in July, 1881; that Mrs. Craig and C. H. Miller and his wife were well aware of his mental incompetency to act for himself when they thus dealt with him, and that the county court of said county, at its November

term, 1866, adjudged him a person of unsound mind and appointed G. D. Thomas his committee; that he had resigned in September, 1871, and that no successor had been appointed until the complainant was appointed such committee at the November term, 1881. The bill sets up the aforesaid facts, and exhibits the trust deed and the orders of the county court as parts of the bill.

C. H. Miller answered, denying that Joseph G. Rutledge is insane or incompetent to contract, or that he was so at the time of said transactions, though he may have been a man of feeble intellect, and denying that he made said sale and conveyance, or became such surety under any undue influence; and alleging that the two mares, wagon and harness were worth the price, and that the sum of $1,800 was the full value of the land when the sale thereof was made; and not denying that a committee had been appointed for Rutledge in 1866, yet insisting that the failure of the county court to appoint a successor for that committee upon his resignation in 1871, and allowing him to manage his own affairs until the plaintiff was appointed such committee in 1881, was equivalent to the discharge of the said Rutledge from the control of a committee; and averring that during this period of ten years he did manage his own affairs without let or hindrance from any source, and was so doing at the time of the said transactions.

Respondent further alleged that his bonds for the deferred payments for the land had been transferred to Mrs. Craig, the sister of Joseph G. Rutledge, with whom said Joseph had resided and by whom he had been cared for during many years up to the time of the institution of this suit, and that she should be made a party. The bill was amended, making Mrs. Craig a party.

Numerous depositions were taken on both sides, which disclose a conflict of opinion among the witnesses as to the mental

capacity of Joseph G. Rutledge. The cause having been matured, at the hearing the circuit court decreed the annulment of the trust deed so far as it purports to convey the said land, and also of the contract of bargain and sale of said land, and of any deed which Joseph G. Rutledge may have made by reason of said contract conveying said land to Mrs. Margaret Miller, or to any or either of the defendants, and awarded the complainant a writ of possession for said land. From this decree Charles H. Miller obtained from one of the judges of this court an appeal and writ of *supersedeas*.

*W. R. Staples* and *T. E. Sullivan*, for the appellant.

*A. A. Phlegar*, for the appellees.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

The appellant assigns as error the rendering of any decree against him, and the refusal of the court below to dismiss the complainant's bill.

Without rehearsing and discussing the evidence upon those questions, it is sufficient to state that the record discloses that there was a complete failure to prove any inadequacy of consideration, or any undue influence exercised by the appellant, or any fraud perpetrated upon Joseph G. Rutledge, whereby he was led into signing his sister's bonds as her surety, or into executing the trust deed, or in entering into the contract of bargain and sale of the said tract of land to the appellant, or in executing any conveyance thereof to Mrs. Miller or to any of the defendants. On the other hand, the evidence shows that Mrs. Craig and Joseph G. Rutledge were residing together, and that the mares, wagon and harness were purchased at a

fair price, to be used, and that they were used in cultivating his land and making a subsistence thereon for him as well as for her and her family; that she was the only one of his relatives who had aided and shown kindness to him from the death of his mother up to the bringing of this suit; and that he himself exercised ownership over, and claimed as his own, the said personal property bought of the appellant. Moreover, the evidence also establishes that he was not a person that was easily influenced by others.

The case, then, turns upon the weight of the evidence as to whether Joseph G. Rutledge was incompetent to contract when, in 1874, he executed the trust deed, and when, in 1881, he made the contract for the sale of the land, and in pursuance thereof conveyed it to Mrs. Miller.

The legal presumption is that all men are sane; and the burden of proof is on him who alleges unsoundness of mind in-any individual. Wharton and Stillé's Med. Juris. sec. 246, and cases cited. Legal competency to act is the possession of mental capacity sufficient to transact one's business with intelligence, and an intelligent understanding of what he is doing. Ib. sec. 2.

And it is laid down in Minor's Ins., p. 572, on the authority of repeated decisions of this court, that: "Mere weakness of the understanding is no objection to a man's disposing of his own estate. Courts cannot measure people's capacities, nor examine into the wisdom and prudence of their property dispositions. If a man be legally *compos mentis,* be he wise or unwise, he is the disposer of his own property, and his will stands as a reason for his actions. The *test of legal capacity* is said to be that the party is capable of recollecting the property he is about to dispose of, the manner of distributing it, and the objects of his bounty. But, of course, the particular act must be attended with the consent of his will and understanding."

*Greer* v. *Greers,* 9 Gratt. 332–3; *Samuel* v. *Marshall,* 3 Leigh, 567; *Beverly* v. *Walden,* 20 Gratt. 147. This extract is literally more appropriate to wills than to contracts. But the rule is the same as respects both.

Now, it is on all hands conceded that Joseph G. Rutledge is a person of weak intellect, of delicate physical condition, and of indolent habits. But the preponderance of evidence establishes clearly the fact that he is not of unsound mind, but is capable of managing his own affairs. Such is the direct and unequivocal, as well as trustworthy testimony of those who have had the most to do with him, of those who have had business transactions with him, and of those who have, for years, lived in the same house with him and observed him closely. Such is the testimony of the Hendersons who hired him frequently as a work-hand on their farms, and of whom he collected his wages; of Luster, and Wilson, and Evans, Boon and Burdett, who sold him goods at Blacksburg and Salem; of his sister, Mrs. Craig; of his brother-in-law, Woodward, who testified that Rutledge acted as caterer and agent at his hotel for a year, "and performed his duties as satisfactorily as any illiterate man could;" of George G. Junkin, Esq., with whom, as attorney at law, Rutledge consulted about the execution of this trust deed, and whom Rutledge employed to have his committee, G. D. Thomas, removed, and who testified that he made the motion, and that the court so ordered, but that pending the motion the committee, Thomas, resigned. So also of D. B. Strouse, Esq., who, as attorney at law, assisted Rutledge in making the sale of the land to the appellant, and who testified that in that transaction Rutledge used ordinary intelligence and judgment in the protection of his interests in the sale, "which he seemed to understand as fully as any one could have done." So, too, Judge Palmer, of Salem, who held the county court of said county, where the sheriff, Fagg, without

notice to any one, was appointed committee, and who testified
that "he hesitated to make the appointment, because he knew
Rutledge as a citizen of Salem, and had not observed that he
was a proper subject for a committee," and that he knew that
"Rutledge voted in Salem."

Charles A. Ronald, Esq., who, as counsel for Joshua B. Rut-
ledge, the trustee of Joseph G. Rutledge, had resisted the
attempt to have the committee, Thomas, removed, testified that
he afterwards had an interview with Joseph G. Rutledge, and
came to the conclusion that he was competent to attend to his
own business, and such was his opinion at the time of depos-
ing. To the same effect is the evidence of many others who
had dealings and familiar intercourse with Joseph G. Rutledge.
To all which, add the fact which appears in evidence, that
during this period of ten years, in which he had no commit-
tee, and in which the transactions complained of occurred,
Joseph G. Rutledge was actually sued in his own proper per-
son, and debts collected of him in the usual course of law.

To this overwhelming array of facts and circumstances the
appellee opposes, first, the fact that a committee was appointed
for Joseph G. Rutledge in 1866; and, second, the testimony of
a number of witnesses who testify to his mental incapacity,
of whom, few, if any, had had such opportunities for know-
ing accurately his capacity, and some of those who testified to
his incapacity even judged only from his appearance, and the
general reputation in the neighborhood as they understood it.

If any inference of continued mental incapacity must be
deduced from the adjudication of the county court in 1866,
and the appointment then of G. D. Thomas as his committee,
such presumption must be regarded as entirely worthless, from
the fact that when, in 1871, Joseph G. Rutledge, by his coun-
sel, G. G. Junkin, Esq., moved to revoke the powers of G. D.
Thomas as such committee, pending which motion Mr. Thomas

came into court and tendered his resignation, which resignation, "for reasons appearing to the court," was accepted; the said court did not appoint any successor to Mr. Thomas as such committee, but permitted Joseph G. Rutledge to resume the custody and control of his own property from that time until November, 1881. It was during this long period of freedom from the control of the court, in which Joseph G. Rutledge enjoyed without restraint all the rights of a citizen, that the transactions assailed in this suit were had. Who, then, was the real mover—the prime promoter of this strife? It was not the sheriff, Fagg, the mere nominal plaintiff, who appears on the record to have been "appointed committee for Joseph G. Rutledge, a lunatic." On the contrary, the evidence clearly points to the fact that it was this same Joshua B. Rutledge, the brother, who had, in 1871, resisted the discharge of Joseph G. Rutledge from the control of his committee. He is the real promoter of this contention, and to his cupidity, as prospective heir, all this ill-conceived and unnecessary litigation is due. Yet the witnesses testify that it was not this brother, Joshua, but the sister, Mrs. Craig, alone, who, from the death of their mother, kindly looked after and cared for Joseph G. Rutledge.

Upon a careful examination of all the facts and circumstances as disclosed by the evidence, there is no reason to doubt that there was a clear failure to establish the truth of the complainant's averment that Joseph G. Rutledge was mentally incapable of executing the said trust deed, and the contract of bargain and sale, and the conveyance of the said land in pursuance thereof, at the several times when the same were respectively executed by him. Nor was any fraud or unfair dealing or anything proved for which the contracts, or either of them, should be invalidated. In fact, the chief point at which the complainant's counsel appeared to aim in examining the numerous witnesses, was the "thriftlessness, or failure to accu-

mulate anything," by Joseph G. Rutledge. As to this, there was unanimity among the witnesses. But it is needless to say that this fact furnishes no test, and by no means establishes the lack of legal competency, however much, in the judgment of the worldly wise, it may smack of a want of worldly wisdom.

In the opinion of the witnesses as to his capacity to manage his own affairs, there is, as already stated, variety and conflict. Yet the evidence should have readily and fully satisfied the mind of the court below that the complainant had utterly failed to make good the case as averred in his bill. Indeed, if the question here was, whether Joseph G. Rutledge was ever a fit subject for a committee, upon the same evidence we could not hesitate to say that he was not, either in 1866 or 1881, or at any intermediate period.

For these reasons; the decree complained of must be reversed with cost to the appellant, and the complainant's bill and amended bill dismissed, with costs to the defendants in the court below.

HINTON, J., dissented.

DECREE REVERSED.