Opinion.

# Richmond.

HOOVER v. NEFF AND OTHERS.

November 21, 1907.

1. DEEDS—*Undue Influence—Burden of Proof—Case in Judgment.*—Undue influence to invalidate a deed or will must be such as to overcome the will and control the judgment of the grantor or testator. The proof must show that the act was procured by coercion, by importunity which could not be resisted, and that the motive was tantamount to force or fear. The burden of proving undue influence is always on him who alleges it. In the case in judgment, the evidence does not sustain the charge.

2. DEEDS—*Undue Influence—Conveyance by Wife to Husband.*—The fact that the grantee in a deed is the husband of the grantor is a circumstance to be considered in determining whether the deed was procured by undue influence, but that fact alone would not justify the annulling of the deed.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for the complainants. Defendant Hoover appeals.

*Reversed.*

The opinion states the case.

*D. O. Dechert,* for the appellant.

*C. R. Wingfield,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

It appears that Emanuel Hoover, appellant, on or about the

1st day of January, 1903, intermarried with one Virginia C. Will, a widow, who then was and up to the time of her death remained without decendants. Her death occurred on the 16th day of March, 1904, about fifteen months after her marriage, and in the early evening of the day preceding her death she executed a deed conveying to the appellant certain lands of value of about $1,000, the conveyance being made for the nominal consideration of $1.00, and the lands conveyed charged with the payment of $100 to Bessie Will, grantor's niece, when she became twenty years of age, and in the event of the death of Bessie Will before she became twenty years of age, appellant was to retain the $100 as his own money.

The bill in this cause was filed by a portion of the next of kin and heirs at law of the grantor against the appellant and other parties named as defendants, to have vacated and annulled the said deed, upon the alleged grounds, that at the time of its execution, the grantor was mentally incapable of engaging in the transaction, and that the same was procured by the exercise of undue influence upon her by appellant. Upon a hearing of the cause on the pleadings and the proofs taken for both the complainants and the appellant, the circuit court made its decree, finding that the grantor was entirely capable of executing the conveyance, but that the conveyance was procured by undue influence, and vacated and annulled the same, except as to the charge thereby created upon the lands in favor of Bessie Will, amounting to $100, as to which the bill itself prayed that the deed be not disturbed. From that decree the appellant obtained this appeal.

The evidence discloses that, at the time of the marriage of appellant with the grantor in said conveyance, she had been for some years a widow, living alone in the country upon the lands in controversy, about a mile from the home of appellant, of whose first wife she was a relative; that her own kindred and heirs at law, or many of them, were of half blood only, and for the most part resided a considerable distance from her; that

nearly all of her kindred ceased communication with her for some time prior to her intermarriage with appellant, and this situation seems to have existed for many years previous to that marriage certainly during the entire period to which reference is made, her kindred had wholly failed to render her any of those kindly attentions usually expected from relatives to one in her position, and had given her no assistance whatever in the conduct of her affairs. On the other hand, it is shown that appellant had been often, prior to his marriage with the said Virginia C. Will, of material assistance to her, aiding her in the cultivation of her lands, supplying her with fire-wood and other necessaries, and during the period of the marriage had completely discharged the duties owing from a husband to a wife, although, for reasons entirely satisfactory to themselves, they continued to reside at their respective homes. The disease which terminated in the death of the wife, was pulmonary tuberculosis, with which she seems to have been affected for a period of two years and possibly somewhat longer, although she was never confined to her bed with it until Monday, the 14th day of March, the third day prior to her death. On that morning, about 7 o'clock, she had what the witnesses describe as a sinking spell, rallying therefrom after about half an hour or an hour and her death did not occur, as before stated, until the night of Wednesday, the 16th of March. It further appears from the testimony of three of the principal witnesses for appellees, that the grantor, at all times after rallying from her sinking spell of Monday morning, was fully aware of her impending dissolution; and that, recognizing her condition on Monday, after the sinking spell, on Tuesday morning and on Wednesday, the day of her death, and at the very moment of the arrival of the scrivener who prepared the deed in question, she was engaged from time to time in stating her desires as to the disposition to be made of sundry articles of her personal property. In fact, counsel for appellees admit that the evidence fails to "indicate any actual mental derangement" in the grantor; the contention

being that, at the time of the execution of the conveyance, she was in such an extreme and desperate state of weakness as to be "a mere passive instrument in the hands of appellant." In other words, the sole question for our determination is, whether or not this conveyance was obtained by appellant by undue influence. Here we have a capable grantor, as is admitted, and the inquiry is, what undue influence, if any, was brought to bear upon her to cause her to execute the conveyance in question? It may be said, by way of narrowing the issue further, that it is admitted, as well as proven in the record, that at no time prior to the Monday on which her final illness began, which was one day before the conveyance in question was executed, was the grantor's condition mentally or physically such as to admit of the successful exercise of undue pressure upon her, and there is no pretense that, up to that time, any had been attempted. It may be further said in this connection, that the proof shows that the appellant had no opportunity to coerce the grantor in the execution of the deed between Monday morning and the moment of its execution, other than his presence in the room at that moment and for a short while prior. The evidence wholly fails to show that, for a single moment, he was alone with the grantor; on the contrary, it is shown that the only time they were together in the room with the door closed, Susan Hiser, a witness for the appellees, was in the room with them.

It is true, that appellant telephoned to the scrivener about a week or ten days before, that he wished him to come down and do some writing, and, the scrivener failing to come, the appellant, on the evening that the conveyance was executed, sent his son for the scrivener, and appellant met him at the house of the grantor and informed him that the title papers by which he would have to write the deed were down at appellant's house, and the deed was actually written at the latter place. Every one of those who were present when appellant was with the grantor, from the time of her sinking spell on Monday up to the time of the execution of the deed, has been introduced as a

witness for appellees, and none of them testify that he endeavored in any way to coerce or even persuade her to convey the land to him in contravention of her own untrammelled desire.

We do not deem it necessary to consider at length the argument presented as to the burden of proof in such a case. In any case, whether the instrument sought to be overthrown and annulled, on the ground of undue influence or coercion, be a deed of conveyance or a testamentary disposition of property, the proof must be that the undue influence or coercion was such as to overcome the will and control the judgment of the grantor, in the one case, or the testator, in the other, and the burden of proof in such a case, as in a case where fraud is charged, is always on him who charges undue influence. *Wallen* v. *Wallen,* ante, p. 131, 1 Va. App. 351, 57 S. E. 596.

In *Griffin* v. *Birkhead,* 84 Va. 612, 5 S. E. 685, a wife indirectly (the only mode by which conveyance could have been made at that time) conveyed her separate estate in lands to her husband, and the transaction was attacked upon the ground that the conveyance was procured by undue influence and coercion of the husband, the relation of husband and wife, and the fact that the husband was the implied trustee for the wife's separate estate, being relied on as raising the presumption of undue influence and coercion: *Held,* "There is nothing in the fact that he (the grantee) was the husband of the grantor in the deeds, and that the subject of the grant was her separate estate, for which he was her implied trustee, which constitutes *per se* evidence of imposition, fraud or undue influence; nor is it material or indispensable that there should have been a valuable consideration for the deeds, if, in truth, there was none."

In *Hartman* v. *Strickler,* 82 Va. 237, supported by a large number of decisions of this court, it was ruled that, in order to invalidate a conveyance on the ground of undue influence or coercion, the proof must show that "the act was procured by

coercion, by importunity, which could not be resisted, and that the motive was tantamount to force or fear."

A deed containing an entire disposition of the estate of the grantor stands in the nature of a testamentary disposition of his property, especially so when it appears that the grantor himself so regarded it. *Greer* v. *Greers,* 9 Gratt. 330.

In the case of *Wallen* v. *Wallen, supra,* the opinion by Keith, P., reviews a number of leading authorities bearing upon the subject, and it was there held that the lower court erred in refusing the following instruction: "The court instructs the jury that the influence which will vitiate a will must amount to force and coercion, destroying free agency. It must not be the mere desire of gratifying the wishes of another; that would be a very strong ground in favor of the testamentary act. Further, there must be proof that the act was obtained by coercion or importunity which could not be resisted; that it was done merely for the sake of peace, so that the motive was tantamount to force and fear."

In *Orr* v. *Pennington,* 93 Va. 268, 24 S. E. 928, it is said: "Cases of this kind plainly turn upon the exercise of actual undue influence of the child over the parent, and not upon any presumption of invalidity." In that case *Greer* v. *Greers, supra,* is cited with approval, in which two deeds disposing of grantor's entire estate to one of his sons were attacked on the same grounds alleged in this case, and the proposition that a presumption of undue influence arose out of the relations of the parties to the transactions, was denied.

A number of cases are cited by counsel for appellees in which a deed or will was annulled on the ground of undue influence, but all that need be said of those cases is, that the proof was very different from that in this case.

The circumstances mainly relied on by appellees as showing coercion or undue influence on the part of appellant in the transaction under consideration are, first, that the appellant was the husband of the grantor, and that the deed was prepared

at his house; second, that the scrivener, in going with appellant's son from his house to that of the grantor, went by a route leading across the fields, through rugged places, etc., instead of by a public road; third, that after their marriage, appellant and his wife continued to reside at their respective homes; and, fourth, that the provisions of the deed are contrary to previous expressions of the grantor's intention.

As to the first, it need only be added to what we have already said, that, while the fact that appellant was the husband of the grantor is a circumstance to be considered in the determination of the question, whether the conveyance was procured by undue influence, that fact alone would not justify the annulling of the conveyance; nor do we attach any importance to the fact, standing alone, that the deed was prepared at appellant's house.

As to the second, the scrivener, J. C. Cooper, and Phillip E. Hoover, who accompanied him, both agree that the only reason why they took the route across the fields, instead of by the public road, was because it was considered nearer, and there is nothing whatever in the record to suggest any other reason why they did so.

With reference to the third ground, viz.: that the appellant and his wife continued to reside at their respective homes: any inference that might be drawn from that circumstance is overcome fully by the proof in the record that the relations between these parties were entirely amicable, and that appellant completely discharged the duties owing from a husband to a wife.

Coming, then, to the fourth ground: While there is some testimony tending to show that the provisions of the deed were contrary to the previous expressions of the grantor's intention, to the effect that she did not intend to "make her property over" to appellant, or that she "would never sign no paper for no man," these declarations were made some time before the execution of the deed, the latter before grantor's marriage with appellant. Frederick Ritchie, a cousin of the grantor, testifies that, about a month before her death, grantor told witness that

"Mr. Hoover (appellant) treated her all right, and she got along fine now," and that "she was going to see that he (appellant) got everything she had—that she wanted him to have everything she had." This witness and others testify as to the feelings of the grantor towards her next of kin, and her purpose that they should have no part of her estate.

Even if such evidence as that relied on were relevant upon an inquiry as to the substantive fact of undue influence, it is entitled to little or no weight, for it cannot be gathered from the statements as made whether or not the grantor had reference to making over her property during her life or its disposition upon her death. It is much more reasonable to interpret these statements as meaning that the grantor intended to retain control of her own property during her lifetime, than that they had reference to her disposition of it at her death.

In *Stevens* v. *Vancleve,* 4 Wash. (U. S. C. C.) 262, cited in *Wallen* v. *Wallen, supra,* Mr. Justice Washington states the law as follows: "The declarations of a party to a deed or will, whether prior or subsequent to its execution, are nothing more than hearsay evidence; and nothing could be more dangerous than the admission of it, either to control the construction of the instrument, or to support or destroy its validity. If the evidence is offered in support of the instrument, it could only have that effect upon the supposition of a uniform consistency of those declarations, not only with the instrument itself, but with the secret intentions of the party, at all times after those declarations were made; and yet how unsafe a criterion would this be, when most men will acknowledge the frequent changes of their intentions respecting the disposition of their property by will, before they have committed them to writing. The uniform consistency of those declarations is the chief ground upon which the whole argument in favor of the evidence is rested; and yet, if the evidence be admitted at all, the plaintiff would be at full liberty to prove opposing declarations of the testator at other times; and thus a door would open to an inquiry in

no respect pertinent to the main subject of investigation, but mischievously calculated to perplex and to mislead the jury. That such evidence has sometimes been given, is proved by many of the cases read by the defendant's counsel; but it would be very unsafe to consider those instances as laying down a rule of law, since, in none of them was an objection made to the admission of the evidence, so as to submit its competency to judicial inquiry and decisions. The general rule of law is against the evidence, and no case has been cited showing an exception to it, unless it was offered to repel a charge of fraud or circumvention of the devisee in obtaining the will."

That the execution of the deed was in pursuance of a previous fixed intention of the grantor, is shown, we think clearly by the following testimony:

Cooper, the scrivener, who took the acknowledgment of the grantor, had been several times elected a justice of the peace in his county, and his reputation for truth and veracity is not questioned. He testifies that he first talked with grantor to satisfy himself "whether she was competent to acknowledge a deed or not," and then read the deed over to her, word for word, boundaries and all," and before signing it, she declared that it was exactly the way she wanted it; and that, after signing, she said that she had been very poorly on Monday, but was better on that day (Tuesday), remarking that she was ready to go on Monday if the Lord called her, except for something, which the witness did not catch, but which is supplied by Phillip E. Hoover, who, when she made the remark, was closer to her than Cooper, and who states that, after she remarked that she had been very ill on Monday, she said, "Although I was ready to go, except one thing—now that is fixed, I am ready to go at any time." Mrs. Sidney B. Hoover also states that, on the day of her death, the grantor told witness that she "had everything straightened up now, and was ready to die;" and there is not a circumstance to show that she had reference to anything else that had been straightened up except the execution of the deed.

Cooper further testifies that, in addition to the grantor being mentally capable of understanding what she was doing, and in the free exercise of her own will and purpose, she gave him some information which clearly explained the location of a part of the land conveyed, with reference to the residue, and correctly stated the sources from which she acquired the title; also discussed intelligently the provision for Bessie Will, etc. Up to the arrival of Cooper she was conversing with appellees' witness, Susan Hiser, and directing the disposition of certain of her personalty. While Cooper noticed the weakness of grantor's voice, it is shown by appellees' evidence that her voice was for some time prior to her last illness, so weak that it was difficult for her to talk at times so as to be understood, while her mind was always clear and unaffected, even up to the last hour of her life.

The undisputed evidence shows that the deed was not executed in any secret manner; on the contrary, the door between the grantor's sick-room, where the deed was executed, and that adjoining it, was left open, and Bessie Will (grantor's niece) and Susan Hiser, both witnesses for appellees, were in the adjoining room, and were not prevented by any one from entering the room, nor even requested to remain outside; and nobody denies that the entire deed, "boundaries and all" was read over by Cooper to the grantor in a loud tone of voice. The fact that the paper was executed at night is fully explained by the fact that the scrivener was a school teacher, living seven or eight miles from grantor's home, and was prevented by his school duties from arriving at an earlier hour. In reply to a question, on cross-examination, as to the instructions given him by appellant, Cooper answered: "He only instructed me this far, he told me that it was Mrs. Hoover's desire to have the deed fixed up in that way, and he furnished me the deeds to write it by, and told me that Mrs. Hoover had said to him to put in the deed in regard to Miss Bessie Will, $100.00 to be paid to her. Those are the instructions Mr. Hoover gave me."

Appellees introduced some evidence that, for some time prior to her death, the grantor had not had, except on the Monday preceding it, the attention of a physician, and doubtless the introduction of this evidence was for the purpose that an inference might be drawn from it, that the relations between appellant and his wife were unpleasant and strained, and that, therefore, the provision by her for him in the deed was an unnatural one. That such an inference is not justified appears from the evidence introduced by the appellees themselves in the depositions of three of their chief witnesses. One of them. Dr. Geil, states that he himself, some time prior to the final sickness of the grantor, advised her to have a physician and take such medicines as were appropriate to her disease, but that she declined to do so. Bessie Will, who was, for a considerable portion of the grantor's latter life an inmate of her house, testifies that the grantor positively refused to have a physician or to take any medicine, and that appellant frequently urged her to do so. Ritchie, a witness unfriendly to appellant, testified to the same effect. The last two witnesses named and another testify that the grantor herself told them on several ocasions that appellant wanted her to reside with him at his home, but that she, for reasons stated, preferred to remain at her own house.

After his wife's death, appellant interposed no objection to Bessie Will and another, who testify for appellees, taking possession of the articles of personalty which she, during the last two days—in fact, during the last hours—of her life indicated that it was her desire they should have; and without discrediting the honesty and intelligence of these witnesses, it could not be supposed that they would have entertained the idea of receiving such benefactions at the hands of one whose condition was such as to preclude either intelligence or freedom of action in their bestowal. As appellant, sole distributee of these articles, voluntarily released them in accordance with the mere verbal expressions of the desire of his wife to these parties, it strongly militates against appellees' theory that he was animated

by a desire to appropriate to himself the property of his wife, regardless of her own will and purpose.

In our view of the evidence, it not only shows that the grantor was mentally capable of executing the conveyance in question, but that this capable grantor, in making the conveyance, acted of her own free will, and was actuated by no motive other than her own purpose and design. Therefore, the decree appealed from will be reversed and annulled, and this court will enter the decree that the circuit court should have entered, dismissing appellees' bill with costs to appellant.

*Reversed.*