## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## HOWARD AND OTHERS V. HOWARD AND OTHERS.

### September 14, 1911.

1.  SANITY—*Presumption—Burden of Proof.*—As a general rule all
    men are presumed to be of sound mind, and the burden is upon
    him who alleges the contrary to prove his allegation. The case
    in judgment is no exception to this general rule.

2.  UNDUE INFLUENCE—*What Constitutes—Burden of Proof.*—Undue
    influence to defeat a deed or will must be sufficient to destroy
    free agency on the part of the person executing the instru-
    ment. It must amount to coercion, practically duress. It must
    be shown to the satisfaction of the court that the party had no
    free will, but stood *in vinculis;* and the burden in such case
    is always upon him who charges undue influence.

3.  DEEDS—*Mental Capacity—Witnesses at Factum—Invited Wit-
    nesses—Other Witnesses.*—Where the mental capacity of the
    grantor in a deed is assailed, the testimony of witnesses who
    were present at the *factum* is more to be relied on than the
    mere opinions of other witnesses who have in the most casual
    and transient way seen the grantor, and whose conclusions
    with respect to the subject of inquiry rest upon no substantial
    basis; and the fact that those present at the *factum* came with-
    out the knowledge or invitation of the grantor, is not a suspi-
    cious circumstance when it appears that they came at the sug-
    gestion and under the advice of counsel who prepared the deed.

4.  DEEDS—*Execution—Reading.*—It is not necessary that a deed
    should be read by or to the grantor therein at the time of its
    execution, where it sufficiently appears that he knew its con-
    tents.

5.  DEEDS—*Validity—Former Will Devising Land to Others.*—The
    fact that a man makes a will dividing both his real and per-
    sonal property among all of his children, and six years there-
    after conveys his land to his three youngest children by a
    second wife, and does not destroy his will, has no tendency to
    impeach the validity of the deed, but simply shows a change
    of purpose.

6.  DEEDS—*Wills—Mental Capacity—Old Age.*—The law prescribes
    no limit in point of age beyond which a person cannot dispose
    of his property. A man eighty-nine years of age is often as

capable of making a deed or will as at any other period of his life. The greatness of his age is not proof of mental incapacity.

7.  DEEDS—*Wills—Mental Capacity—Unequal Disposition of Property by Parent.*—An unequal disposition of property by a father among his children does not indicate mental incapacity. Courts cannot measure the size of people's capacities, nor examine into the wisdom and prudence of men in disposing of their property. If a man be legally *compos mentis*, be he wise or unwise, he is the disposer of his own property, and his will or deed stands as a reason for his actions.

Appeal from a decree of the Circuit Court of Russell county. Decree for complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*H. A. & J. K. Routh* and *J. C. Gent,* for the appellants.

*Finney & Wilson,* for the appellees.

HARRISON, J., delivered the opinion of the court.

By deed dated January 21, 1909, Hiram Howard, since deceased, conveyed to the appellants, Joseph Howard, Henry Howard and Amanda Howard, several tracts of land lying adjacent to each other, containing in the aggregate about one hundred and sixty-five acres, upon which the grantor resided, reserving to himself an estate in the land conveyed for and during the term of his natural life. The three grantees in this deed were the children of Hiram Howard by his second marriage, the last two named being under twenty-one years of age. The bill in this case was filed in the Circuit Court of Russell county by the appellees, six children of Hiram Howard by his first marriage, asking to have set aside the deed of January 21, 1909, to the appellants, upon the ground that the grantor was mentally in-

capable of making the deed, and upon the further ground
that undue influence had been exerted over him.  In re-
sponse to the prayer of the bill, the circuit court set aside
and annulled the deed in controversy, and from that decree
this appeal has been taken.

It appears that Hiram Howard and all of his children
lived upon the most cordial and amicable terms; the case
being free from the bickerings usually found in such con-
troversies.  It further appears that Hiram Howard, though
at the advanced age of eighty-nine when he died, had lived
an active and frugal life, nothing appearing of either men-
tal or physical weakness until about eight or nine months
before the deed in controversy was executed, when he was
afflicted with "aphasia," involving some difficulty in his
power of speech.  It further appears that at the time of the
execution of the deed the grantor was living at his home on
the land in controversy, with his wife and her three chil-
dren, the appellants, while the appellees, his six children by
a former marriage, had more than twenty years before all
married and left the home of their father, each having ac-
quired an independence of greater value, to be inferred from
the evidence, than that possessed by the father.  On the
other hand, the appellants, the three children by the second
marriage, two of whom were under age and without educa-
tion, were living at home, carrying on the work of the farm
and aiding in promoting the care and comfort of their
father in his old age.  In this situation and surroundings,
Hiram Howard made the deed of January 21, 1909, con-
veying his real estate to the appellants, reserving a life es-
tate for himself.

The general rule is well settled that all men are presumed
to be of sound mind, the burden being upon him who alleges
the contrary to establish such allegation.  *Burton* v. *Scott,*
3 Rand. 399; *Miller* v. *Rutledge,* 82 Va. 867, 1 S. E. 202;
*Wallen* v. *Wallen,* 107 Va. 131, 57 S. E. 596.

The evidence furnishes no ground for the contention that this case comes within the terms of an exception to the general rule, which casts upon the defendants the burden of showing that the grantor was mentally capable of making the deed in question. Under the facts of this case, to say that mental incapacity must be presumed until capability is proved, would be to say that insanity is the natural state of the human mind. *Burton* v. *Scott, supra,* p. 400.

The allegation that undue influence, causing him to make the deed, was exerted over the grantor, is without any evidence to sustain it. Before undue influence can be made the ground for setting aside a deed or will, it must be sufficient to destroy free agency on the part of the person executing the instrument. It must amount to coercion—practically duress. It must be shown to the satisfaction of the court that the party had no free will, but stood *in vinculis;* and the burden in such a case, as in a case where fraud is charged, is always on him who charges undue influence. *Jenkins* v. *Rhodes,* 106 Va. 564, 56 S. E. 332; *Hoover* v. *Neff,* 107 Va. 441, 59 S. E. 428; *Wood* v. *Wood,* 109 Va. 470, 63 S. E. 994.

The only fact pointed out in suppport of the charge of undue influence is that, some years before the deed was made, when Hiram Howard was having his will prepared, his wife said to him that "she thought he ought to give her and the children all the land, that the land ought not to be divided between the first children." This remark did not influence her husband, for he proceeded to execute the contemplated will dividing his land between all of his children. The remark was not more than legitimate suggestion, which is permissible, and furnishes no warrant for the charge that undue influence was exerted.

The evidence also fails to sustain the charge that Hiram Howard was mentally incapable of disposing of his land on the 21st day of January, 1909, when the deed in question

72

was executed by him. A large number of witnesses were introduced on both sides of this issue, speaking of the mental capacity of the grantor both before and after the execution of the deed. None of the appellee's witnesses saw the grantor the day the deed was executed, and practically all of them admit that they could not speak as to his mental condition at that time. This evidence is more than offset by the testimony of numerous friends and neighbors of the grantor, who show that he was capable of making the deed. This character of evidence is, however, always very unsatisfactory and inconclusive. It consists of mere opinions of witnesses who have in the most transient and casual way seen the person whose mental capacity is assailed, and whose conclusions with respect to the subject of inquiry rest upon no substantial basis.

The testimony of witnesses who were present at the *factum* is more to be relied on than the opinion of other witnesses based on facts, which may be proved and yet not be the result of unsoundness of mind. *Beverly* v. *Walden,* 20 Gratt. 147; *Porter* v. *Porter,* 89 Va. 118, 15 S. E. 500.

There were present on the occasion of the execution of the deed in this case six witnesses, including the justice who took the acknowledgment. They were intelligent friends and near neighbors of the grantor who saw him frequently. They all speak of his mental condition when the deed was executed, and, after hearing and observing him with a view of ascertaining his mental condition, they all agree that he was of sound mind and capable of disposing of his property. The weight of this evidence has not been met or overcome by any other evidence in the record, and it must be accepted as establishing the fact that the grantor was mentally capable of making the deed in controversy at the time it was executed.

Criticism is made of the fact that these witnesses were summoned to be present at the *factum* by the appellants,

without the solicitation or knowledge of the grantor. The unfavorable appearance sought to be drawn from this circumstance is answered by the fact, shown of record, that the witnesses were present at the suggestion and under the advice of the attorney who prepared the deed. The sequel shows the wisdom of that advice and the course pursued in response to it. In the case of *Porter* v. *Porter, supra,* one of the witnesses to the will voluntarily summoned several other witnesses to test the soundness of the mind of the testatrix, and we find no intimation in that case that such a course suggested any impropriety on the part of those who adopted it.

It is relied on as a suspicious circumstance by the appellees that the deed was not read to the grantor at the time of its execution. The evidence shows that the contents of the deed had been made known and explained to the grantor before it was executed, and the justice who took the acknowledgment and several of the other witnesses at the *factum* testify that it was suggested that the deed be read, when the grantor said that it was not necessary, that he understood its terms. It further appears that some days after the deed was executed, it was read over to the grantor, and that he expressed his satisfaction with it, saying that he had fixed up his business now and was satisfied. This evidence as to the knowledge of Hiram Howard of the contents of the deed is undisputed. That it was, under such circumstances, unnecessary to read it at the time of its execution is sustained by the case of *Montague and wife* v. *Allan's* Ex'or, 78 Va. 592, 49 Am. Rep. 384, where it is held, that to be satisfied that the testator knew the contents of the will when it was executed was all that was necessary.

In the year 1903 Hiram Howard made and executed a will by which he gave his lands to be equally divided between all of his children by his first and second marriages. After the testator's death this will was proven and admitted to

record.   Comment is made upon the fact that this will shows the purpose of the testator, when it was written, with respect to the division of his lands; and upon the further fact that it was not destroyed when the deed was made. That men may and constantly do change their minds with respect to the disposition of their property is a sufficient answer to the fact that Hiram Howard changed his, between the year 1903 when the will was made· and 1909 when the deed in controversy was executed.   As a legal proposition, it was not necessary that the will should have been destroyed when the deed was made.   That it was not destroyed is sufficiently accounted for by the fact that it disposes of the testator's personal property, which the deed does not do, and it was necessary to preserve the will to that end.

Stress is laid by appellees upon the great age of the grantor as tending to sustain the allegation of mental incapacity.   The law prescribes no limit in point of age beyond which a person cannot dispose of his property.   A man eighty-nine years of age is often as capable of making a deed or will as at any other period of his life.   The greatness of his age is not proof of mental incapacity.   *Spencer* v. *Moore,* 4 Call 423.   Nor is testamentary capacity destroyed by mere failure of memory incident to old age. *Montague* v. *Allan's Ex'or, supra.*

It is shown that Hiram Howard had been a strong man physically and mentally; that he had lived a careful and moral life; and that, apart from the ordinary infirmities of age, the only affliction he suffered with at the time the deed was made was one of a physical nature which did not affect his mind in any such way as to destroy his capacity to make the deed.

The unequal disposition by the grantor of his land among his children is relied on as indicating mental incapacity. Courts cannot measure the size of people's capacities, nor

examine into the wisdom and prudence of men in disposing of their property. If a man be legally *compos mentis,* be he wise or unwise, he is the disposer of his own property, and his will or deed stands as a reason for his actions. *Greer* v. *Greer,* 9 Gratt. 330.

Hiram Howard was living at his home with his wife and his three children by her, two of whom were under age. They lived upon terms of reciprocal affection and confidence. This young family shared his toils and burdens, and did what they could to make the evening of the father's life one of peace and comfort. The six children by his first marriage had for many years been settled in homes of their own and had prospered. The land disposed of by the deed is valued at from seven to eight thousand dollars. Taking the highest valuation, it would give the nine children, if divided equally, $888.88 each. Divided among the three beneficiaries of the deed, each would have $2,666.66. The father had doubtless considered this question and concluded that the small sum to each arising from an equal division would not justify him in leaving his wife and infant children helpless and without a home. Certainly, to many, the final disposition made by the grantor of his land would commend itself, not only as wise, but as a most natural and proper disposition under the circumstances. Be that as it may, it was his disposition, and cannot be disturbed.

Upon the whole case, we are of opinion that the circuit court erred in setting aside and annulling the deed in controversy, dated January 21, 1909. The decree appealed from must, therefore, be reversed, and this court will enter such decree as the circuit court ought to have entered, dismissing the bill filed by the appellees, with costs, in favor of the appellants.

*Reversed.*